## 36612. DUCKWORTH v. THE STATE.

NICHOLS, Justice.

Donald Bruce "Duck" Duckworth was convicted and sentenced to life imprisonment for the murders of James Daniel "Bear" Graham and Richard David Boyd, the two life sentences to be served consecutively. This is his appeal.

The jury heard evidence authorizing the following to be found as facts beyond a reasonable doubt: Duckworth, Graham, Boyd and others dealt in marijuana. Duckworth purchased marijuana from or through Graham, as did others including Bobby Allen Wilson, Mark Snipes, Randy Saxon, Mark Ammons, Gregory Lee, Wyatt "Rabbit" Bagwell, and Raymond East. Boyd was Graham's friend.

Wilson, Snipes and Saxon had provided Duckworth some "front money" with which to purchase marijuana but Duckworth neither had obtained the marijuana nor returned the money. Ammons and Lee drove to Duckworth's apartment either to get the marijuana or to bring back the money. Duckworth and Ammons telephoned Graham, who told them he had the marijuana and would make the transfer to them that evening.

Ammons had brought his .22 caliber Ruger semi-automatic pistol with him at Duckworth's request. Duckworth loaded the pistol with hollow-point rounds and left for his connection with Graham.

Graham divided the shipment of marijuana and left to make his connections with Duckworth, Bagwell and East. East and his girl friend, Marsha Adkinson, drove to the C & M Quick Market to make their connection with Graham. When East and Adkinson arrived, an empty pick-up truck and a light-colored late-model automobile were in the parking lot of the market. A white male with curly or wavy brown hair, who was wearing wire-rimmed glasses, was sitting in the parked car. Graham and Boyd arrived, and Graham got

into the light-colored automobile. Graham signaled East not to follow. The light-colored automobile with Graham and the white male left followed by Boyd in his automobile. East and Adkinson remained in the parking lot. Approximately 15 minutes later, East and Adkinson heard fireworks or gunfire. When Graham did not return, they left.

A witness testified that he saw two automobiles traveling down the Old Dallas Highway "real close together." Approximately three to five minutes later he heard gunfire, after which one of the automobiles returned up Old Dallas Highway.

Duckworth returned to his apartment with the pistol and ten to eleven pounds of marijuana. He unloaded the pistol and returned it to Ammons, commenting that he had shot some possum. He delivered the marijuana to Wilson the next day, as promised.

East went to look for Graham's automobile, found it together with Graham's and Boyd's bodies, and arranged for the police to be notified.

Medical evidence indicated Graham's death was caused by a bullet in the brain fired at close range from behind. Boyd died from two gunshot wounds, one in the back of his head fired at close range, and another fired at greater range. The medical examiner testified that scrape marks on Boyd's body indicated that he was shot once while running away then shot again in the back of the head at close range.

Duckworth was contacted by the investigating officers through his girl friend and agreed to come to police headquarters for questioning. He was stopped by officers at his apartment when he arrived there instead of at police headquarters. He signed a consent to search, pursuant to which a pair of wire-rimmed eyeglasses were removed from his automobile. Pursuant to a search warrant, marijuana, $200.00 and a CCI brand .22 caliber cartridge were removed from his apartment. He was arrested, read his rights and questioned.

East and Adkinson immediately identified Duckworth's automobile, parked in the police lot among some seventy-five other automobiles, as the vehicle in which they saw Graham leave the C & M Quick Market.

Five CCI brand .22 caliber shell casings were recovered at the murder scene by investigating officers. Markings on these casings indicated that they had been fired from the .22 caliber pistol recovered from Ammon's house. The location of three of these shell casings indicated that they had contained the death bullets. Graham and Boyd had been shot with hollow-point bullets consistent with CCI brand ammunition.

Duckworth testified that he knew Graham but not Boyd. He admitted his involvement in the drug dealings. He denied he made money from the sale of marijuana but the state's evidence revealed he made only $148.00 per week and that approximately $1,200.00 had passed through his checking account very recently during a four-day period. He testified that the arrangements for the marrijuana connection on the evening of the murders were made by him and Graham, and that he drove a van that night and did not carry a gun. He swore he made the deal with Graham then went home. He admitted that he does occasionally wear glasses for driving but was not sure if he had them with him that night. He admitted that he may have purchased some hollow-point .22 caliber cartridges.

1. He first enumerates as error the denial of the general grounds. The foregoing evidence amply supports the verdicts under the current legal standard. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Rutledge v. State,* 245 Ga. 768 (267 SE2d 199) (1980).

2. Duckworth next contends that the trial court erred in setting his two life sentences to run consecutively rather than concurrently. He relies upon the rationale of *Wade v. State,* 231 Ga. 131 (200 SE2d 271) (1973), as extended and applied by a majority of the members of this court in *Anglin v. State,* 244 Ga. 1 (1) (257 SE2d 513) (1979), to cases in which the death penalty is sought but two recommendations of mercy are returned by the jury without a specification as to whether the life sentences to be fixed by the court shall run concurrently or consecutively. When the death penalty is sought, the judge and jury proceed in accordance with Code Ann. §§ 27-2503 (b) and 27-2534.1. The rationale of *Wade* as extended and applied in *Anglin* is that Code Ann. § 27-2510 (a) requires that the two life sentences fixed by the court pursuant to the two recommendations of mercy of the jury be served concurrently unless the *jury* specifies that they be served consecutively.

The *Anglin* principle does not apply in the present case because the state did not seek the death penalty; hence, Code Ann. §§ 27-2503 (b) and 27-2534.1 were inapplicable and the court sitting without a jury pursuant to Code Ann. § 27-2503 (a) was authorized to fix Duckworth's two life sentences to run either concurrently or consecutively. Setting the count two sentence to run consecutively to the count one sentence was not error. The second enumeration of error is without merit.

3. In support of his third and fourth enumerations of error, Duckworth contends that his motion to suppress certain evidence should have been sustained since the warrant to search his residence was defective because the state failed to establish the reliability of the

confidential informants and failed to show probable cause to believe the items sought were located in his residence. He relies on Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964) and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969). During a hearing on a motion to suppress, the burden rests upon the state to prove that the search and seizure were lawful. Code Ann. § 27-313 (b). However, unless the factual or credibility findings of the trial court on the motion to suppress are shown to have been clearly erroneous, those findings must be accepted by this court. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *Tucker v. State,* 245 Ga. 68 (3) (263 SE2d 109) (1980).

The reliability of the confidential informants was established primarily by testimony of the investigating officer presented to the justice of the peace prior to his issuing the warrant. The reliability of the information obtained from one confidential informant had been verified through an independent source. Another informant had been a friend of the investigating officer for over twelve years, and also was the brother of one of the two murder victims. Statements of other informants were verified by polygraph tests. Two of the informants risked criminal prosecution by divulging information because they were some of the other persons who were supposed to have received a "drop" from the victims on the night of the homicides. The latter two informants had observed one of the victims get into Duckworth's automobile at the C & M Quick Market and had observed Duckworth drive away from the market with one of the victims in his automobile, accompanied by the other victim following in a second automobile. The finding of the trial court regarding reliability of the confidential informants is not clearly erroneous.

Neither is the trial court's finding regarding probable cause clearly erroneous. The pistol used in the commission of the crimes had not been located during the consent search of Duckworth's automobile. Duckworth was reputed to have returned to his home after the homicides. Personal items were missing from the bodies of the victims which were not discovered during the search of Duckworth's automobile. It was reasonable to infer that one or more of these items would be found during the search of Duckworth's residence. *Murphy v. State,* 238 Ga. 725 (1) (234 SE2d 911) (1977). The third and fourth enumerations of error are without merit.

4. Duckworth contends that the trial court erred in refusing to require the jurors to be examined individually on voir dire outside the presence of each other. "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within

the sound discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." *Whitlock v. State,* 230 Ga. 700, 706 (5) (198 SE2d 865) (1973). More specifically, this court has held that "whether or not this individual questioning of the jurors is to take place outside of the presence of the other jurors is one of those matters lying within the sound discretion of the trial court." *Finney v. State,* 242 Ga. 582, 586 (4) (250 SE2d 388) (1978).

Duckworth supported his motion for sequestered examination by the testimony of a clinical psychologist to the effect that sequestered voir dire examination of jurors would give a more accurate profile of biases and prejudices. The mere possibility that jurors' answers might be more accurate under sequestered individual examination falls far short of a showing of sufficient prejudice to require a holding that the trial court manifestly abused his discretion. *Stinson v. State,* 244 Ga. 219, 221 (259 SE2d 471) (1979). The fifth enumeration of error is without merit.

5. Duckworth contends next that the trial court abridged his right of confrontation by sustaining the State's objection to his question as to the source of the marijuana. The state's witness under cross examination by the defense already had answered the question more than once by saying that he did not know where Graham got the marijuana; that he merely had provided the money with which Graham purchased it. The question was repetitive. No abuse of discretion has been illustrated. *Davis v. State,* 230 Ga. 902, 904 (3) (199 SE2d 779) (1973); *Ruffin v. State,* 243 Ga. 95, 104 (16) (252 SE2d 472) (1979).

6. In his seventh enumeration of error, Duckworth contends that the trial court erred by admitting in evidence a mugshot taken of him at the time of his arrest. The photograph was highly relevant because the state's witnesses Marsha Adkinson and Ray East observed the victims drive away from the C & M Quick Market accompanied by a white male who had wavy or curly brown hair and who was wearing wire-rimmed glasses. A determination by the jury of whether or not Duckworth met this description thus was crucial to the state's proof. The photograph was admissible for that purpose. *Cooper v. State,* 229 Ga. 277 (3) (191 SE2d 27) (1972).

7. The trial court sustained the defense's hearsay objection to the testimony of the state's ballistics expert insofar as the witness swore that another firearms examiner had reached the same conclusions based upon his examination of the .22 pistol. Duckworth now contends that the court on its own motion should have instructed the jury to ignore the testimony to which the objection related. No motion for corrective action was made and denied during trial. The eighth enumeration of error is without merit. *Hightower v. State,* 137

Ga. App. 790 (4) (224 SE2d 842) (1976).

8. During trial, Duckworth objected to the introduction of any evidence as to bullet fragments removed from Boyd's body on the ground that the bullet fragments had been lost and were not available at trial. On appeal, Duckworth contends that *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), precluded introduction of such evidence because due process required that analysis of the bullet fragments not be left completely within the province of the state. Assuming that the objection at trial and the enumeration of error raise the same issue, *Patterson* involved no more than identification of a substance as contraband. This court has declined to extend the *Patterson* contraband principle to create a right to an independent examination in behalf of the defendant of all physical evidence utilized in a criminal case. *Moore v. State,* 240 Ga. 807, 814 (5) (243 SE2d 1) (1978); *Emmett v. State,* 243 Ga. 550, 554 (3) (255 SE2d 23) (1979). This court declines to extend the *Patterson* principle to the bullet fragments involved in the present case.

Furthermore, the testimony that the bullet fragments could have been fired from the .22 pistol introduced in evidence was in no respect crucial as to guilt or innocence, and its introduction, if error, was harmless. The defense was able to have all other physical evidence in the possession of the state subjected to independent examination and analysis. The state's ballistics expert testified that the shell casings definitely were fired in the .22 pistol that was in evidence. Furthermore, the state's evidence placing Duckworth at the murder scene with the pistol was overwhelming. Duckworth borrowed the pistol from Ammons, took it with him that night, then returned it to Ammons. Duckworth admitted his participation in the drug transactions that night but denied he had the pistol or that he shot the victims. He admitted that he may have purchased .22 hollow-point ammunition. The shell casings found at the murder site were from the same brand of hollow-point .22 caliber ammunition recovered from his residence. He was seen driving away from the market with the victims just minutes before the death shots were fired. The ninth enumeration of error is without merit.

9. Duckworth contends in his tenth enumeration of error that the trial court erred by allowing him to be cross-examined regarding his employment of an independent expert to examine the .22 pistol introduced by the state in evidence as the murder weapon. An objection was interposed to the entire line of questioning, but Duckworth was allowed to testify that an expert had been hired to check on whether or not the pistol was the weapon that had been used to shoot Graham and Boyd. The trial court sustained a hearsay objection to the question of whether or not Duckworth knew the

results of his expert's tests. No abuse of discretion as to the scope of cross-examination by the state has been shown. *Ruffin v. State,* 243 Ga. 95, 104 (16) (252 SE2d 472) (1979).

10. Duckworth contends that the trial court erred in excluding the testimony of Lieutenant Keheley and and Agent Pierce. This testimony was tendered by the defendant to impeach Sergeants Lee and Tressel, who had conducted the investigation of the murders. Sergeants Lee and Tressel had testified that they were confident that Duckworth was the murderer, that no one else was being investigated or was under suspicion for the murders, and that the investigation of the murders was complete.

Agent Pierce apparently would have testified that an unnamed informant had told Pierce that he had heard of a second individual, also unnamed, who knew of a third individual, also unnamed, who might be able to implicate a fourth individual in the murders for which Duckworth was on trial. Lieutenant Keheley's testimony was still further removed from the fact in that he only could have testified that Agent Pierce told him the foregoing. The state's hearsay objection properly was sustained to this line of questioning.

*Judgment affirmed. All the Justices concur.*

SUBMITTED AUGUST 29, 1980 — DECIDED NOVEMBER 5, 1980.

*Huff & Phillips, B. Wayne Phillips, P. Samuel Huff, Edwin J. Wilson,* for appellant.

*Thomas J. Charron, District Attorney, Debra Halpern, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.