## 72814. CHUMBLEY v. THE STATE.
(349 SE2d 823)

POPE, Judge.

This case presents a very difficult issue: Was there a reasonable suspicion to make a valid *Terry* stop of the defendant's automobile? The facts giving rise to this appeal are as follows: On November 1, 1985 Officer J. V. Wilson of the Henry County Sheriff's Department reported for duty. As he left the stationhouse to go on the 4:00 o'clock shift, the dispatcher handed Officer Wilson a note. In the words of Officer Wilson, the note read: " 'Lookout, El Camino,' [Tag Number RD 8940], 'Otis Lee Chumbley driving. Subject has suspended driver's license.' " Officer Wilson testified that the information was telephoned to the dispatcher, that he did not know who called it in, and that he was not aware that it was an anonymous tip. The caller did not give a physical description of Otis Lee Chumbley to the sheriff's department, and Chumbley was not known to Officer Wilson.

Later that night, at about 10:00 p.m., Officer Wilson spotted an El Camino being driven on Highway 42. The officer followed the vehicle for about one-half of a mile. He observed that the license plate matched the tag number on the note he received from the dispatcher. No traffic offenses were committed by the driver of the vehicle. Moreover, Officer Wilson did not observe any suspicious behavior on the part of the driver. Nevertheless, Officer Wilson stopped the vehicle. It was being driven by defendant, Otis Lee Chumbley. The officer asked defendant for his driver's license. Defendant informed the officer that he did not have a license. The officer "plugged" defendant's name and date of birth into the computer. In short order, the officer learned that defendant's driver's license was revoked because he was a habitual violator and defendant was arrested.

Thereafter, via indictment, defendant was accused of being a habitual violator in violation of OCGA § 40-5-58. He was tried by the court sitting without a jury and found guilty. Following sentencing, defendant appealed. In his sole enumeration of error, defendant contends the trial court erred in denying a motion to suppress evidence and a motion in limine. The motion sought to suppress the testimony of Officer Wilson on the ground that it was the fruit of an unlawful *Terry* stop. *Held:*

"The Supreme Court of the United States has held that when a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889) (1968). To justify a warrantless intrusion of this nature, the State must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion. *Terry v. Ohio*, supra; [cits.]

"What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing. [Cit.] 'Where no circumstances at all appear which might give rise to an articulable suspicion (less than probable cause, but greater than mere caprice) that the law has been violated, the act of following and detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen.' *Brooks v. State*, 129 Ga. App. 109, 111 (198 SE2d 892) (1973)." *Brisbane v. State*, 233 Ga. 339, 341-42 (211 SE2d 294) (1974).

This case involves one of the factual predicates upon which an articulable suspicion may be founded — the receipt of information from an unidentified informant. From the testimony of Officer Wilson, Chumbley infers that the tip was anonymous. The record simply does not support this. All the record shows is that Officer Wilson knew someone had called the police, and that he relied on the information given him by a fellow officer. The information given him was not that Chumbley was driving and might not have a license; he was told, "Subject has suspended driver's license." Officer Wilson was entitled to rely on the information given him by a fellow officer. See *State v. Waters*, 170 Ga. App. 505 (2) (317 SE2d 614) (1984); *Griggs v. State*, 167 Ga. App. 581 (1) (307 SE2d 75) (1983). To hold that he could not would virtually halt law enforcement, as each officer of the line questioned his superior about the source of the information upon which orders for lookout were based.

In the recent case of *State v. Noble*, 179 Ga. App. 785 (347 SE2d 722) (1986), this court stated that a police officer "would have been remiss in his duties" had he not acted to verify information given him by an unknown driver that the driver of the car behind him was drunk. Id. at 786. In *Noble*, we found that the actions of the officer were based upon reasonable and articulable grounds. So, too, were the actions of Officer Wilson in acting upon information given him in the normal course of police business by another police officer.

Therefore, we hold that Officer Wilson's brief stop of Chumbley to check his driver's license was based on more than mere caprice and was allowable under *Terry*, supra. See *Frankum v. State*, 174 Ga. App. 660 (1) (331 SE2d 52) (1985); *Griggs v. State*, supra; *Anderson*

*v. State*, 123 Ga. App. 57 (2) (179 SE2d 286) (1970). The ruling of the trial court denying the motion to suppress is affirmed.

*Judgment affirmed. Banke, C. J., Deen, P. J., Birdsong, P. J., Carley, Sognier, Benham, and Beasley, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I must respectfully dissent.

The majority opinion correctly observes that reasonable suspicion to justify a *Terry* stop may exist on the collective knowledge of the police. See, e.g., *United States v. Allison*, 616 F2d 779 (5th Cir. 1980). However, the majority's analysis mistakenly stops there. A tip does not create a reasonable suspicion of criminality simply because it is relayed amongst members of the police force. See *Parker v. State*, 161 Ga. App. 37, 39 (3) (288 SE2d 852), wherein it is said, "In cases where an informant supplies the information to one officer who then relays it to a fellow officer, the question has revolved around the reliability of the informant." The majority opinion leaves the question begging: Did the tip carry sufficient indicia of reliability to justify a *Terry* stop?

The State had the burden of providing evidence sufficient to answer this question affirmatively. See *Duckworth v. State*, 246 Ga. 631, 634 (272 SE2d 332) (1980). As the majority opinion notes, the record is silent on this question. Thus, the reliability of the informant has not been demonstrated.

It has been held that a "tip from an informant of unknown reliability ordinarily will not create a reasonable suspicion of criminality." *United States v. Kent*, 691 F2d 1376, 1379 (11th Cir. 1982), cert. denied 462 U. S. 1119 (103 SC 3086, 77 LE2d 1348) (1983). "Such a tip will often give no indication of the informant's past reliability, nor will it indicate the basis for the informant's information and conclusion that criminal conduct is taking place." *United States v. Gomez*, 776 F2d 542, 546 (5th Cir. 1985). Thus, it is clear that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams*, 407 U. S. 143, supra at 147. In my opinion, the tip in the case sub judice falls into this category.

I recognize that in numerous cases investigatory stops have been upheld where the information given by an unknown tipster is corroborated by the observation of innocent details. See, e.g., *United States v. Gomez*, 776 F2d 542, supra; *United States v. White*, 648 F2d 29, 43 (D.C. Cir.), cert. denied 454 U. S. 924 (102 SC 424, 70 LE2d 233) (1981); *United States v. Sierra-Hernandez*, 581 F2d 760 (9th Cir.), cert. denied 439 U. S. 936 (99 SC 333, 58 LE2d 333) (1978); *State v.*

*Jernigan*, 377 S2d 1222 (La. 1979), cert. denied *Jernigan v. Louisiana*, 446 U. S. 958; *Groves v. United States*, 504 A2d 602 (D.C. App. 1986). Two common factors can be found in these cases.

The first factor is the danger to the public. The information received from the unknown informant often presents an immediate and real danger to the public if, in fact, it is correct. See, e.g., *United States v. White*, 648 F2d 29, supra at 45; *State v. Jernigan*, 377 S2d 1222, supra at 1225; *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836). (In this regard, it should be noted that the "need" for a stop lies in direct proportion to the seriousness of the offense. See *United States v. Oates*, 560 F2d 45, 59 (2nd Cir. 1977).) The second factor is the reliability of the informant. The question is whether it is reasonable to infer from the information received that the informant "is sufficiently well-acquainted with the individual to know that he may be involved in criminal activity." *United States v. Gomez*, 776 F2d 542, supra at 547. In other words, the information given by the informant must not be of "the sort readily available to the public." Id.

Neither one of these factors can be found in this case. The only information given by the informant which was corroborated by the officer *before* he made the investigatory stop was the make and model of an automobile bearing a particular license plate. This information was readily available to any passerby. It did not suggest that the informant could have known more personal facts about defendant. It was not specific as to time or place. Even if correct, the information did not demonstrate an immediate and real danger to the public. (The informant did not intimate the vehicle would be operated in a negligent manner or that the driver was under the influence of alcohol or drugs. Compare *Griggs v. State*, 167 Ga. App. 581 (1) (307 SE2d 75). The only assertion made by the informant was that the driver of the vehicle had a suspended driver's license. This crime does not pose an imminent threat to the safety of the public. See OCGA § 40-5-121 (a).)

The recent case of *State v. Noble*, 179 Ga. App. 785 (347 SE2d 722), upon which the majority relies, is not apposite. First, "Unlike a person who makes an anonymous telephone call, [the *Noble*] informant confronted the agent directly. By thus presenting himself to the agent and doing so while driving a car from which his identity might easily be traced, the informant was in a position to be held accountable for his intervention. The reliability of the information was thus increased." *United States v. Sierra-Hernandez*, 581 F2d 760, 763 (9th Cir. 1978). Second, the temporal and spatial accuracy of the information was not a matter of conjecture. Third, the crime charged, driving under the influence, presented a clear danger to the public.

I would reverse the judgment of the trial court.

DECIDED OCTOBER 20, 1986.

*Benjamin W. Studdard III*, for appellant.

*E. Byron Smith, District Attorney, Thomas McBerry, Assistant District Attorney*, for appellee.