### A93A0922. LANE v. THE STATE.
(437 SE2d 479)

SMITH, Judge.

Chuck Lane was convicted on a twelve-count indictment of aggravated assault, possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, theft by taking, burglary in two counts, and simple assault. He was acquitted on a second count of aggravated assault, a second count of possession of a firearm in the commission of a crime, as well as charges of theft by receiving stolen property and criminal attempt. A nolle prosequi was entered on the remaining count of fleeing or attempting to elude a police officer. Lane appeals following the denial of his motion for new trial.

1. Lane enumerates as error the denial of his motion to sever offenses pursuant to OCGA § 16-1-7 (c). The sequence of events encompassing the charges against Lane began when a 1978 Ford Granada was stolen on the morning of November 1, 1989 at approximately 7:00 a.m. in Warner Robins, Georgia. When the owner recovered his automobile a day later, three letters addressed to Lane were found in the glove compartment. The jury acquitted Lane on the charge of theft by receiving stolen property with respect to this incident.

Early that afternoon in Henderson, Georgia, Mrs. Rae Hooker awoke from a nap and heard something upstairs she thought was a squirrel. She remembered taking laundry upstairs, but could recall nothing else prior to seeking help because she was hurt. She had been struck in the head with a hammer and her home burglarized. The jury convicted Lane on the burglary and aggravated assault charges resulting from the attack on Mrs. Hooker.

Soon after the approximate time Hooker was assaulted, an eyewitness alerted local residents that someone was attempting to break into the home of a neighbor, Wayne Marshall. Items belonging to Hooker were later discovered at the Marshall home, as well as pry marks in the fresh paint on Marshall's kitchen window. Lane was charged with, and acquitted of, criminal attempt in relation to this incident.

Responding to the eyewitness alert, a retired Georgia State Patrol officer, Dozier Blackstock, drove to the Marshall home and found Lane walking away from the direction of Marshall's residence toward the Hooker home. Blackstock then got into the pickup truck of his father-in-law, Charlie Kersey, and Blackstock and Kersey followed

Lane, watching him as he walked along Highway 41. In the meantime, Blackstock's wife called the local sheriff's office.

Kersey eventually stopped his truck as Blackstock called out to Lane, requesting that he wait because someone from the sheriff's office was on his way and would want to talk to him. Lane then approached Blackstock and Kersey, put his hands on the hood of Kersey's truck, and allowed Blackstock, who was plainly armed, to search his person. A struggle followed. Lane managed to gain control of Blackstock's firearm, then drove away in Kersey's truck. Lane was accused of assaulting each man separately with the weapon and of stealing Kersey's truck. Lane was convicted of aggravated assault and possession of a firearm during the commission of a crime in relation to the offense against Blackstock, acquitted of the same charges with respect to Kersey, and convicted of theft by taking with respect to Kersey's truck. Lane was also convicted of possession of a firearm by a convicted felon.

Little more than an hour later Blackstock and several other townspeople again saw Lane in the stolen truck. Blackstock and the others gave chase. The truck was wrecked near the home of Willie T. Ridley, where Lane was finally apprehended. When Ridley arrived home later that day, he found his "Sunday pants" missing, discovering instead another pair which contained within one of its pockets Lane's driver's license. When Lane was apprehended, he was wearing pants that were "falling down." Lane was convicted of burglary with respect to this incident.

Lane argues that the charges against him were not so similar as to require a denial of his motion for severance, and that there was no single scheme, plan, or series of acts connected together that would authorize the denial of his severance motion. "A denial of severance is reviewed under an abuse of discretion standard. [Cit.] Offenses may be tried together when they are based on the same conduct or constitute a series of acts connected together (or when they constitute part of a single scheme or plan). [Cit.]" *Davis v. State*, 263 Ga. 5, 6 (3) (426 SE2d 844) (1993). " 'It is not an abuse of discretion in the interest of justice for the judge to refuse a motion for severance of the trial of multiple charges where the crimes alleged were part of a continuous transaction conducted over a relatively short time, and ". . . from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of another. . . ." [Cit.]' " *Smith v. State*, 186 Ga. App. 303, 307 (2) (367 SE2d 573) (1988).

With the arguable exception of the theft by receiving charge involving the incident in Warner Robins, of which Lane was ultimately acquitted, we find that all of the offenses formed a series of acts closely connected in time, involving common witnesses and evidence.

We do not find the number of offenses charged in this case, nor the complexity of the evidence, to be such that the trial court abused its discretion in denying Lane's motion to sever. *Smith*, supra at 307-308 (2). See generally *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975).

2. Lane enumerates as error the denial of his motion to suppress two statements made at the time he was arrested. Appeal counsel offers that the motion was "apparently" denied prior to jury selection. We find no transcript of any pretrial hearing or ruling on the motion in the record before us, and no clear indication of the court's ruling on the motion as to each statement. From the trial transcript, it appears that Lane and the State agree that the trial judge ruled both statements admissible prior to trial. Without a written record of the evidence presented on the motion, however, as opposed to that presented at Lane's trial without objection, there is nothing for us to review. See *Boston v. State*, 185 Ga. App. 740, 741-742 (2) (365 SE2d 885) (1988). This enumeration is without merit.

3. Lane asserts error in the overruling of an objection to the introduction of blood samples of one of the victims, Rae Hooker, made on the ground that the State could not provide the name of the person drawing the blood. "In order to render admissible testimony concerning expert analysis of an essentially fungible item such as a blood sample or a drug, the prosecution must have various persons who had custody of the item testify to their receipt and retention of the substance until delivery to some other person. [Cit.] This is referred to as the chain-of-custody requirement, and its purpose is, of course, to ensure that the drug or blood sample is in fact that taken from the [person in question]." *Harper v. State*, 251 Ga. 183, 185 (1) (304 SE2d 693) (1983).

The officer taking immediate custody of the blood sample in this case was present and watched as the sample was drawn from Hooker. The identity and testimony of the person physically taking the sample is therefore irrelevant to the limited purpose of ensuring that the sample offered was in fact drawn from Hooker. Moreover, no argument is advanced suggesting that the potential lack of expertise on the part of the person drawing Hooker's blood is in any way relevant to the probative value of the sample itself. We find no error.

4. In separate enumerations, Lane raises the general grounds and the denial of his motion for directed verdict on each of the seven counts resulting in a conviction, but fails to present argument, citation of authority, or reference to the record specific to any single count. Lane merely offers the standard enunciated in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), contending that "each and every offense of each of the three (3) incidents to which he was convicted [should] be analyzed separately to ascertain

whether the State of Georgia has . . . met [its] burden," and adding that "each incident presented different types of evidence, testimony and issues." We agree. Accordingly, since Lane has failed to do precisely what he rightly contends must be done, these enumerations are deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). *O'Dell v. State*, 200 Ga. App. 655 (1) (409 SE2d 54) (1991).

5. The remaining enumerations are meritless.

*Judgments affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED OCTOBER 14, 1993 —
RECONSIDERATION DISMISSED NOVEMBER 3, 1993.

*Jeffrey L. Grube*, for appellant.
*Edward D. Lukemire, District Attorney, A. Robert Tawse, Jr., Assistant District Attorney*, for appellee.