## A94A0037. TOTH v. THE STATE.
### (444 SE2d 159)

McMurray, Presiding Judge.

Defendant was charged, via indictment, with possession of cocaine in violation of Georgia's Controlled Substances Act. The evidence adduced at a jury trial revealed the following:

At about 3:00 in the afternoon on October 29, 1991, Deputy Jose Miquel Black of the Gwinnett County Sheriff's Department went to the Georgia Department of Correction's probation office in Gwinnett County to execute an arrest warrant. Deputy Black "pulled into the probation parking lot [and] parked as close to the front door as possible because [he] didn't want to walk the person through the parking lot. . . . As [the deputy] got out of [his patrol] car [he] noticed in the car next to [him] a fluorescent hat sitting on the seat and bottom up inside [t]he hat was a syringe." Deputy Black "walked up into the probation waiting area and . . . asked whose vehicle it was and [defendant] identified it as his vehicle." Deputy Black "asked [defendant] if [he] could get something out of [the suspect vehicle] and [defendant] says, . . . sure, and so [the deputy] walked to the vehicle and opened the driver's door and reached across and retrieved the hat and the syringe. [Deputy Black and defendant then] walked back into the probation office and [the deputy] informed [defendant's] probation officer[, Beth Chester of the Georgia Department of Corrections,] that [he] found [a syringe] inside [defendant's] vehicle." Deputy Black also informed Probation Officer Chester that defendant said the suspect vehicle "was owned by his brother-in-law and sister but that he had driven it to the office that day alone."

Probation Officer Chester checked defendant's file and discovered that defendant was at the probation office for an initial interview relating to probation imposed pursuant to defendant's October 4, 1991, conviction for possession of heroin and possession of cocaine. Probation Officer Chester asked defendant "what [is] the syringe . . . for [and defendant] told [her] that his brother-in-law, Vince Mara, was a diabetic and that the syringe was his and he used it for insulin injection. . . . [F]ive to ten minutes later, [defendant] told [Probation Officer Chester] that his brother-in-law . . . was not a diabetic, that he had just said that because it sounded good, and that this syringe was not used for insulin." Probation Officer Chester then "asked [defendant] if he would consent to having his vehicle searched [and defendant] told [her] that he would."

Officer Russell Bridgers of the City of Lawrenceville Police Department soon arrived at the probation office and "asked [defendant] again if he'd give consent . . . to have someone search the automobile and [defendant] said he would [and] executed a consent to search

form. . . ."[1] Another officer from the City of Lawrenceville Police Department then searched the suspect vehicle using a dog trained to detect the presence of drugs. The search revealed "a small glassine bag, ziplock type bag, with a white powder residue in it from underneath the back seat." The white powder residue tested "positive for cocaine."

Pursuant to conditions of defendant's probation, Probation Officer Chester "requested that Officer Bridgers take the Defendant to the nearest medical center [so] that a screen of a bodily substance of the Defendant be taken for the presence of controlled substances." Officer Bridgers complied and samples of defendant's blood were drawn at a nearby hospital. These samples later tested positive for the presence of metabolites which only appear after ingestion of cocaine.

Defendant was found guilty of possession of cocaine and sentenced to five years of confinement. However, the trial court ordered that the period of confinement be probated after 12 months at the Gwinnett Public Works Camp; that defendant pay fines and a monthly probation supervision fee and that defendant attend "NARCOTICS ANONYMOUS MEETINGS TWICE/WEEK UPON RELEASE." This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant first challenges the denial of his motion to suppress, arguing that the results of blood tests indicating the presence of cocaine-induced metabolites were unjustified because of a lack of probable cause to support such an intrusive bodily invasion. Defendant also asserts the following: "Appellant contends that although he may have been obliged to submit to blood and urine tests as a condition of his probation and the results used as evidence at a probation revocation hearing, if ordered and paid for by the State, but the Appellant has to order the test . . . and the Appellant was required to pay the costs of the tests, which would make the results of those test his private property and as stated in O.C.G.A. 24-9-20; 'No person, who shall be charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction shall be compellable to give evidence for or against himself.' (See *Green v. The State*, 260 Ga. 625 (1990), Green address[es] a urine sample opposed to a blood sample.)" These arguments are without merit. *Green v. State*, 194 Ga. App. 343 (2), 344 (3) (390 SE2d 285).

The judgment of conviction and sentence imposed upon defendant pursuant to his October 4, 1991, conviction for possession of her-

---

[1] Officer Bridgers testified that he informed defendant before execution of the consent to search form that a dog trained to detect the presence of illegal substances would be used to conduct any search of the suspect vehicle.

oin and possession of cocaine provides, in pertinent part, as follows: "Probationer shall, from time to time upon oral or written request by any Probation Officer, produce a breath, urine, and/or blood specimen for analysis for the possible presence of a substance prohibited or controlled by any law of the State of Georgia or of the United States." This express condition of probation is a valid waiver of defendant's Fourth Amendment right against warrantless searches because it is less obtrusive than alternative punishment; it is logically connected to defendant's conviction for possession of heroin and possession of cocaine and it appears to be tied to a legitimate rehabilitative purpose. See *Luke v. State*, 178 Ga. App. 614, 616 (2) (344 SE2d 452). Further, the events leading to extraction of defendant's blood for the purpose of drug testing reveal that Probation Officer Chester invoked the drug testing provision of defendant's probationary sentence in good faith, i.e., her order for drug testing was not arbitrary, harassing or a ruse for an unlawful purpose. See *Luke v. State*, 178 Ga. App. 614, 616 (2), supra. Consequently, the request for defendant to produce a blood specimen for analysis was a lawful exercise of Probation Officer Chester's authority. *Green v. State*, 260 Ga. 625, 626 (2) (398 SE2d 360); *Nelson v. State*, 199 Ga. App. 487, 488 (3) (405 SE2d 310).

2. In his second enumeration, defendant contends the trial court erred in allowing Probation Officer Chester's testimony concerning retraction of defendant's explanation that the syringe found by Deputy Black belonged to his diabetic brother-in-law and that his brother-in-law used the syringe for insulin injections. Defendant argues that this testimony amounts to proof of an incriminating admission he uttered without knowledge of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694).

"Miranda, by its very terms, does not apply to 'general on-the-scene investigation.' " *Shy v. State*, 234 Ga. 816, 820 (218 SE2d 599). "So long as the interrogation is not aimed at obtaining information to establish a suspect's guilt but is instead aimed at determining the nature of the situation upon the arrival of the [law enforcement officer] on the scene, some initial inquiry may, under the circumstances, be permissible before Miranda warnings are given. [*Aldridge v. State*, 247 Ga. 142, 144 (2) (274 SE2d 525)]." *Lolley v. State*, 259 Ga. 605, 606 (385 SE2d 285). In the case sub judice, Probation Officer Chester testified that defendant "told me that his brother-in-law, Vince Mara, was a diabetic and that the syringe was his and he used it for insulin injection [and that later] on . . . , five to ten minutes later, [defendant] told me . . . that his brother-in-law in fact was not a diabetic, that he had just said that because it sounded good, and that this syringe was not used for insulin." The inquiry which prompted this retraction came immediately after Deputy Black's report that a syringe was found in the front seat of defendant's car. Probation Officer

Chester was not then familiar with defendant or defendant's case. She was only aware that defendant was scheduled that afternoon for an initial interview relating to his probationary status for possession of heroin and possession of cocaine. These circumstances reveal that the question which prompted defendant's retraction of his earlier statement regarding the purpose of the syringe was part of an initial on-the-scene investigation aimed at determining the nature of the situation presented by Deputy Black. Consequently, failure to inform defendant of his rights under *Miranda v. Arizona*, 384 U. S. 436, supra, did not require suppression of Probation Officer Chester's testimony. See *Minnesota v. Murphy*, 465 U. S. 420 (104 SC 1136, 79 LE2d 409).

3. Next, defendant contends the trial court erred in denying his motion for directed verdict of acquittal, arguing the State failed to prove that he was in actual or constructive possession of cocaine. This contention is without merit. Evidence of a plastic bag with cocaine residue in a car over which defendant had exclusive control before his arrest, evidence of defendant's elusive behavior after initial questioning by his probation officer and expert testimony that metabolites which appear only after ingestion of cocaine were discovered in defendant's blood is sufficient to authorize the jury's finding that defendant is guilty, beyond a reasonable doubt, of possession of cocaine as charged in the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Green v. State*, 260 Ga. 625 (1), supra.

4. Defendant contends the trial court impermissibly allowed the State to introduce into evidence a copy of his October 4, 1991, conviction and sentence for possession of heroin and possession of cocaine. " 'Where evidence is otherwise relevant and material to the issues being tried, it is not rendered inadmissible merely because it may incidentally place the defendant's character in issue. (Cits.)' *Worthy v. State*, 180 Ga. App. 506, 508 (3) (349 SE2d 529)." *Lanzo v. State*, 187 Ga. App. 616, 617 (2), 618 (c) (371 SE2d 119). In the case sub judice, there is little doubt that admission of a copy of defendant's prior conviction and sentence for possession of heroin and possession of cocaine placed his character in issue. However, evidence of this conviction and sentence was relevant to explain defendant's presence at the Gwinnett County probation office on the day of his arrest. In fact, admission of evidence of defendant's prior conviction and sentence was virtually unavoidable since suspicion of the unlawful conduct constituting the basis of the crime charged in the case sub judice arose on the premises of the government agency charged with supervising defendant's probationary sentence for these prior offenses. Consequently, there was no harm in allowing admission of a copy of defendant's October 4, 1991, conviction and sentence for possession of heroin and possession of cocaine.

5. In his fifth enumeration, defendant contends the trial court

erred in admitting the hat and syringe seized by Deputy Black into evidence, arguing the deputy's search of the vehicle was without consent or probable cause. This contention is without merit.

Deputy Black initially observed the syringe and hat lying in plain view through a window of a vehicle parked in a public area. This observation therefore did not involve an unauthorized intrusion of the vehicle. See *Starks v. State*, 204 Ga. App. 185 (419 SE2d 75). Further, there was ample proof that Deputy Black seized the hat and syringe from the vehicle pursuant to defendant's free and voluntary consent, i.e., consent obtained without express or implied duress or coercion. *Maxwell v. State*, 211 Ga. App. 73 (438 SE2d 389).

6. Defendant's sixth enumeration urges that "[t]he Trial Court erred in its response to a Jury question; 'Do we concern ourselves with the legality of the arrest?', in that the Court's response was 'No[.]'" The argument supporting this enumeration provides as follows: "Although the Court responded to the Jury's question but did not include Defendant's Request to Charge Number 4 in its form in the pattern charge. And the legality of the arrest would fall within the circumstances connected with the arrest of Appellant."

"Any enumerated error which is not supported in the brief by citation of authority or argument shall be deemed to have been abandoned." Court of Appeals Rule 15 (c) (2). The argument supporting this enumeration is void of citation of authority or logic. Further, an examination of the pertinent portion of the trial transcript reveals no argument supporting defendant's objection to the trial court's response to the jury's question. Consequently, defendant's sixth enumeration is deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). *Keith v. State*, 204 Ga. App. 404, 405 (2) (419 SE2d 491).

7. Defendant's seventh and eighth enumerations challenge the trial court's charge to the jury. However, the record shows that defense counsel stated that he had "no objection" when the trial court asked for exceptions to its proposed charge to the jury. Consequently, defendant waived his right to assert a charging error on appeal. *Grissett v. State*, 199 Ga. App. 547 (1) (405 SE2d 542); *Davis v. State*, 209 Ga. App. 187, 189 (4) (433 SE2d 366).

8. In his ninth enumeration of error, defendant contends the trial court's sentence is cruel and unusual because he "was sentenced so he would not receive any treatment that may have considered him in a more favorable light, allow him the opportunity for special programs or incentive."

Defendant was sentenced to five years of confinement to be probated after 12 months at the Gwinnett Public Works Camp. Defendant is also required to pay fines and a monthly probation supervision fee and to submit to special conditions of probation. This punishment is well within the range authorized by law for possession of cocaine,

OCGA § 16-13-30 (c). Consequently, defendant's "contention of cruel and unusual punishment is meritless. *Sherrell v. State,* 170 Ga. App. 798 (318 SE2d 221); *Fain v. State,* 165 Ga. App. 188 (300 SE2d 197). This court is without authority to review sentences that are within the statutory range. Id." *Ortiz v. State,* 188 Ga. App. 532, 537 (7) (374 SE2d 92).

9. In his final enumeration, defendant contends the trial court's sentence requiring him to attend "NARCOTICS ANONYMOUS MEETINGS TWICE/WEEK UPON RELEASE" is not a valid condition of probation because it takes "away the voluntary aspect of the program and requiring other members to reveal their identity."

To warrant reversal, harm as well as error must be shown. *Blanton v. State,* 191 Ga. App. 454, 455 (2) (382 SE2d 133). In the case sub judice, defendant fails to show harm in the requirement that he attend "NARCOTICS ANONYMOUS MEETINGS TWICE/WEEK UPON RELEASE." Further, we find no possible injury to defendant in requiring such a condition of probation. It is less obtrusive than confinement; it is logically connected to defendant's conviction for possession of cocaine and it appears to be tied to a legitimate rehabilitative purpose.

*Judgment affirmed. Pope, C. J., and Smith, J., concur.*

DECIDED MAY 17, 1994.

*Wayne L. Burnaine,* for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney,* for appellee.