## A94A2140. BECK v. THE STATE.
### (455 SE2d 110)

ANDREWS, Judge.

Beck was charged with possession of cocaine and marijuana. He was tried and convicted of possession of cocaine, acquitted of the other charge, and appeals.

On January 15, 1993, Beck filed a motion to suppress. A hearing on that motion was held on February 26, 1993. Detective Key of the Dalton Police Department testified that on May 28, 1992, shortly before noon, he received a phone call from a paid confidential informant whom he had known for about three years. This informant had previously provided information to Key that resulted in ten separate felony arrests, convictions and seizures of large quantities of illegal drugs.

On this occasion, the informant told Key that he had observed Bonnell Beck and Merle Bradley on Straight Street and that they had cocaine in their possession. The informant told Key that the men had driven off to pick up more cocaine and that they were traveling in an older model black Firebird. He told Key that they had cocaine with them when they left. Key admitted that the informant did not provide many specifics as to the packaging or amount of the cocaine. Key stated that he was acquainted with Beck as being a drug offender.

Key related this information to Detective Leonard and asked him to follow up on it. He stated that there was a "be-on-the-lookout" for Beck issued over the telephone to the police officers in the area. Key stated that prior to the informant's call, he knew Beck as a drug offender involved with cocaine.

Sergeant Hammad El-Ameen of the Dalton Police Department testified that on May 28, 1992, he received notice from the dispatcher to be on the lookout for a black Firebird. The dispatcher stated that the vehicle would be driven by Beck and that Bradley would be the passenger; that the vehicle would be coming back from Calhoun; and that the men would have cocaine in their vehicle. El-Ameen stated that he previously knew Beck and knew that he drove a dark Firebird.

El-Ameen testified that he saw the vehicle on Blue Ridge Street.

He motioned for Beck to stop. When Beck stopped, El-Ameen told him that he needed to talk to him. El-Ameen and Beck got out of their vehicles. El-Ameen stated at trial that based on his experience as a law enforcement officer, the fact that Beck got out of his car so quickly was an indication to him that he did not want El-Ameen near his vehicle. El-Ameen told Beck that he had received information that Beck might have drugs in his car. Beck appeared nervous at this suggestion and denied having drugs in his car. El-Ameen asked for permission to search Beck's car, and Beck denied this request. Then Officer Keener pulled up and Beck got "real irritated and began cursing, and he made a move to get back in his car and he cranked the car with some kind of gadget." El-Ameen urged Beck not to leave. Beck insisted on leaving and tried to drive off, whereupon El-Ameen got back in the patrol vehicle and positioned it to block passage of Beck's vehicle.

El-Ameen saw that Beck had a plastic bag in his hand, which he was holding behind his back. El-Ameen stated that when Beck saw him coming toward him, he put the whole bag in his mouth and started chewing it. El-Ameen stated that he and Officer Keener grabbed Beck's jaws and told him to spit it out.

When Beck would not spit the bag out of his mouth, Officer Keener sprayed some Cap Stun — an aerosol chemical irritant — in Beck's face and the officers handcuffed him and put him in the patrol car. Detective Leonard obtained a search warrant to search Beck's stomach contents and his urine.

El-Ameen took Beck to the hospital in his patrol car. In Leonard's presence, the hospital employees obtained a urine sample from Beck and pumped his stomach. Leonard stated that the stomach contents were placed in two bottles, which were sealed with paraffin. The urine sample was sealed with a screwtop. Leonard placed the three containers in an evidence locker at the police station.

Upon returning to the police station, El-Ameen searched the back seat of his patrol car where Beck had been during the drive to the hospital. No one other than Beck had been in that seat since El-Ameen's search at the beginning of his shift. The search revealed a chewed-up plastic bag that was wet and chalky. Inside the bag was a dried pink paper which also appeared to have been chewed by Beck. The bag and chalky substance were also placed in an evidence locker.

Officer Stewart, the property and evidence custodian at the Dalton Police Department, retrieved the items from the evidence lockers and placed them in the evidence hold at the Dalton Police Department. The items remained in Stewart's custody until he transported them to the Georgia Crime Lab. There was no evidence that the items were tampered with.

The pink paper from the plastic bag tested positive for cocaine

and marijuana. The urine sample tested positive for both cocaine and marijuana. One vial of stomach contents tested positive for a significant amount of cocaine; the other vial of stomach contents tested negative for the presence of cocaine. The vial which contained the cocaine indicated that the contraband had been recently ingested.

1. In his first enumeration of error, Beck contends that the court committed harmful error in failing to grant his motion to suppress all evidence seized from him after the illegal stop and detention of him. Beck contends that the initial stop was invalid and that there was no reason for the police to pull him over; he argues that any evidence seized was the result of an illegal search. He also argues that the State failed to meet its burden at the hearing on the motion to suppress under OCGA § 17-5-30 of showing that the seizure of his bodily fluids was proper and that the State failed to establish that the warrant was properly obtained.

"On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgment made. The trial court's findings must be adopted unless determined to be clearly erroneous." (Citations and punctuation omitted.) *Thomas v. State*, 203 Ga. App. 529, 534 (3) (417 SE2d 353) (1992).

The standard for a *Terry* stop has been set forth repeatedly. " 'Although an officer may conduct a brief investigative stop of a vehicle, [cit.], such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); [cit.].' " *Tarwid v. State*, 184 Ga. App. 853, 854 (1) (363 SE2d 63) (1987). " 'An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. [Cits.]' " *Tarwid*, supra at 854.

The issue to resolve is whether the stop was justified under these standards, given that El-Ameen himself did not receive the information from the informant. Beck argues that the information from the dispatcher was nothing more than an anonymous tip and that El-Ameen had no reason apart from the information he received from the dispatcher to stop Beck. "Information obtained by police officers engaged in an investigation may be used by another officer common to that investigation as a reliable basis for the establishment of probable cause. [Cits.] In cases where an informant supplies the information to one officer who then relays it to a fellow officer, the question has revolved around the reliability of the informant. Where the informant is found to be reliable, probable cause for the non-receiving officer to search exists. [Cits.]" *Parker v. State*, 161 Ga. App. 37 (3, 4) (288 SE2d 852) (1982). There is no requirement that the officer making the stop have all the information the original officer had about a

suspect and the informant. *Parker,* supra at 39. In other words, "the searching officer need not personally be aware of all the facts which would support a probable cause determination so long as it can be established by evidence that the searching officer's actions were the end result of a chain of information-sharing, one link of which is an officer in possession of the 'information requisite to support an independent judicial assessment of probable cause.' [Cit.]" *Parker,* supra at 40; see generally *Waldrip v. State,* 205 Ga. App. 864 (424 SE2d 31) (1992).

El-Ameen's stop of Beck was based on "a chain of information-sharing" set off by a paid confidential informant. See generally *Chumbley v. State,* 180 Ga. App. 603 (349 SE2d 823) (1986); *Hite v. State,* 206 Ga. App. 245 (1) (424 SE2d 885) (1992). "Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. (Cit.)" *State v. McFarland,* 201 Ga. App. 495, 496 (411 SE2d 314) (1991).

In the instant matter, El-Ameen had reasonable grounds for stopping the vehicle based on his founded suspicion that Beck had cocaine in his possession. This case differs from *Moreland v. State,* 204 Ga. App. 218 (418 SE2d 788) (1992), in several particulars. In contrast to the situation in *Moreland,* the tip here was not an anonymous one, it was provided by a *paid* confidential informant and then transmitted through the channels of police communication. Thus, the tip had more indicia of reliability than an anonymous tip. See *Bentley v. State,* 214 Ga. App. 580 (2) (448 SE2d 479) (1994). The tip made a prediction about future behavior and gave specifics regarding the men's activity. See generally *Alabama v. White,* 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990). Moreover, El-Ameen was acquainted with Beck prior to the stop and corroborated information from the tip prior to stopping the vehicle. We find no error in the court's denial of the motion to suppress based on Beck's arguments regarding the initial stop. See generally *Brooks v. State,* 208 Ga. App. 680 (1) (431 SE2d 466) (1993); *State v. Ball,* 207 Ga. App. 729 (429 SE2d 258) (1993); compare *State v. Sapp,* 214 Ga. App. 428 (448 SE2d 3) (1994).

Next, we address Beck's argument that the trial court erred in denying his motion to suppress since the State failed to meet its burden of proof under OCGA § 17-5-30 of showing that the search and

seizure was lawful. Although at the hearing Beck argued that the State had failed to meet its burden of proof, he did not raise any specific arguments alleging that the warrant was illegal or not supported by probable cause. Though the search warrant which was obtained on May 28, 1992 was not made part of the record of the hearing, it was identified by Officer Leonard at trial.

Further, Leonard testified that he wrote his portion of the warrant and that the judge signed it. The warrant before us contains Leonard's affidavit in which he recites the information known about Beck and his activities prior to the stop. He also stated that El-Ameen saw Beck eat a small plastic bag and that Beck stated to El-Ameen that he had swallowed marijuana. Leonard swore that it was his experience that drug offenders swallow crack cocaine and that cocaine is a powerful narcotic, which consumed in quantity may cause death or serious illness. He stated that he feared for the physical well-being of Beck.

In considering the denial of the motion to suppress, we may consider both the transcript on the hearing and the trial transcript. *Rowe v. State*, 184 Ga. App. 437, 438 (1) (361 SE2d 705) (1987). Given the facts of this case, the fact that the State did not introduce the warrant and affidavit at the hearing was immaterial. See *Russell v. State*, 181 Ga. App. 624 (1) (353 SE2d 820) (1987). We find no error in the denial of Beck's motion to suppress evidence.

2. Secondly, Beck argues that the court erred in overruling his objection to evidence of the stomach and urine contents since the State failed to connect the chain of custody and failed to establish to a reasonable degree of certainty that the evidence was the same as that seized and that there had been no tampering with it. Beck contends that Officer Leonard is not trained in medicine and that it was necessary for the State to produce a medical technician to describe the procedures which were done and to verify from whence the bodily fluids came.

We do not agree. "In order to render admissible testimony concerning expert analysis of an essentially fungible item such as a blood sample or a drug, the prosecution must have various persons who had custody of the item testify to their receipt and retention of the substance until delivery to some other person. This is referred to as the chain-of-custody requirement, and its purpose is, of course, to ensure that the drug or blood sample is in fact that taken from the person in question." (Citations and punctuation omitted.) *Lane v. State*, 210 Ga. App. 738, 740 (3) (437 SE2d 479) (1993). "The officer taking immediate custody of the . . . sample[s] in this case was present and watched as the sample was drawn from [Beck]. The identity and testimony of the person physically taking the sample is therefore irrelevant to the limited purpose of ensuring that the sample offered was in fact drawn from [Beck]." *Lane*, supra at 740.

The fact that one of the vials tested negative for cocaine does not alter this conclusion. The evidence established a clear chain of custody from the time the samples were taken from Beck until they were tested. There was no evidence that the items had been tampered with and the evidence was properly admitted.

3. Finally, Beck contends that the court erred in failing to grant his motion for a directed verdict of acquittal. The standard of reviewing the denial of a motion for directed verdict of acquittal is that from *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994). Here, we find that a rational trier of fact could find from the evidence adduced at trial proof of Beck's guilt beyond a reasonable doubt.

*Judgment affirmed. Beasley, C. J., and Johnson, J., concur.*

DECIDED MARCH 8, 1995.

*Bates, Kelehear, Starr & Toland, James E. Toland, Jr.*, for appellant.

*Jack O. Partain III, District Attorney*, for appellee.