## A03A1179. MILLSAP v. THE STATE.
(582 SE2d 568)

JOHNSON, Presiding Judge.

A jury found Calvin Millsap guilty of possession of cocaine. Millsap appeals, arguing that the evidence was insufficient to support his conviction, the trial court erred in permitting the testimony of Dr. Mary Jo Brasher concerning Millsap's blood tests, and the trial court erred in making a waiver of Millsap's Fourth Amendment rights a condition of probation. We find no error and affirm Millsap's conviction.

1. Viewed in a light most favorable to support the jury's verdict, the record shows that members of the Hall County Multi-Agency Narcotics Squad ("MANS") received information that Millsap would be arriving at a designated location to make a cocaine sale. MANS agents familiar with Millsap arrived at the location and observed Millsap driving very slowly down the road. As the agents pulled behind Millsap, they noticed him looking in his rearview mirror repeatedly and "abnormally." The agents also observed Millsap put an object in his mouth. Millsap stopped his car at the end of the road, at which point the agents approached Millsap's car. The agents noticed Millsap chewing something and saw an off-white residue in and around his lips, mouth, and tongue. Both agents believed the substance to be crack cocaine based on their visual observations, as well as their experience and prior training. An agent instructed Millsap to spit out the substance, but Millsap refused and continued "slushing his tongue. around a lot and swallowing." Millsap was removed from the car and arrested.

After being advised of his *Miranda* rights, Millsap informed the agents that he was on the road to "meet some lady" and "make me some money." Millsap then voluntarily consented to give a sample of his blood and urine. An agent transported Millsap to Northeast Georgia Medical Center, where the agent provided a sealed blood kit to a nurse from the lab and observed as the nurse took a blood sample from Millsap, filled out the appropriate paperwork, sealed the blood sample in a vial, and then sealed both in the blood kit with a piece of evidence tape. The agent then took the sealed blood kit to the Hall County property and evidence room.

Subsequently, Brasher, a forensic toxicologist from the Georgia Bureau of Investigation Crime Lab, received a sealed kit labeled "Calvin Millsap" from the Hall County Sheriff's Office and tested that blood. The blood tested positive for benzolylecogine, a metabolite of cocaine. Brasher testified that the benzolylecogine entered the blood of the donor no more than ten hours prior to the blood being drawn.

In addition, one of the agents testified regarding a similar trans-

action in which Millsap was arrested for and pled guilty to possession of cocaine with intent to distribute.

Based on the evidence, we conclude that a rational trier of fact could have found Millsap guilty beyond a reasonable doubt of possession of cocaine.[1] Not only did the state introduce blood test results showing a metabolite of cocaine in Millsap's blood, but Millsap's actions upon arriving at a pre-determined dead-end location at a specified time, his refusal to spit out the white cocaine-like substance despite several demands to do so, his statement that he was at the location to meet a lady and make some money, as well as his prior history of attempting to distribute cocaine, were all factors which the jury properly considered in rendering its decision.

While Millsap argues that the state failed to prove that the blood tested was actually his blood, we find no merit to this argument. Millsap bases his argument on the fact that the vial was labeled with his name and there was no evidence regarding how his name got on the vial. However, "[a]bsent affirmative evidence of tampering, mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury."[2] Here, there was testimony from the agent who watched the blood being drawn that the nurse filled out the appropriate paperwork, sealed the blood sample in a vial, and then sealed both in the blood kit with a piece of evidence tape. The state crime lab analyst who tested the blood testified that she received the sealed vial labeled with Millsap's name and case number. There is no indication from the record of any suspicion that the blood tested was not the blood sought to be admitted into evidence.[3] The contention that the blood test results should not have been admitted is without merit.

2. Millsap contends the trial court erred in permitting the testimony of Brasher concerning Millsap's blood tests because the state failed to establish that the person who drew Millsap's blood was "qualified" within the meaning of OCGA § 40-6-392 (a) (2). OCGA § 40-6-392 provides that when the state seeks to prove that a person committed the offense of driving while under the influence[4] by using a chemical test, the state must bear the burden of proving that the person drawing the blood was "qualified."[5] However, Millsap was not charged with driving under the influence, and therefore, the requirements of OCGA § 40-6-392 do not apply.

---

[1] See *Chergi v. State*, 234 Ga. App. 548, 550 (4) (507 SE2d 795) (1998); *Toth v. State*, 213 Ga. App. 247, 250 (3) (444 SE2d 159) (1994).

[2] (Citations and punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999).

[3] See *Stephens v. State*, 259 Ga. 820-821 (3) (388 SE2d 519) (1990).

[4] See OCGA § 40-6-391 (a).

[5] See OCGA § 40-6-392 (a).

Moreover, in the present case, the agent taking immediate custody of the blood sample was present and watched as an individual he identified as a nurse or lab technician drew the sample from Millsap. The identity and testimony of the person physically taking the sample are therefore irrelevant to ensuring that the sample offered was in fact drawn from Millsap.[6] And, there is no evidence in the record suggesting that the potential lack of expertise on the part of the person drawing Millsap's blood is in any way relevant to the probative value of the sample itself.[7] We find no error.

3. Following the jury's verdict, the trial court sentenced Millsap to a prison term followed by probation. Millsap contends the trial court erred in imposing a waiver of his Fourth Amendment rights as a condition of his probation. Millsap is correct that a Fourth Amendment waiver should not have been imposed absent a negotiated plea or a valid waiver of such a right.[8] However, any error that might have taken place at sentencing is harmless. In the present case, no warrantless search has taken place in assertion of Millsap's Fourth Amendment waiver, and we will not presume that any search that may take place in the future under the authority of a probation officer will be unreasonable, even if it is warrantless. Because the trial court's conditions of probation are not unlawful per se, the trial court need not modify them.[9]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED MAY 30, 2003.

*Leo E. Benton, Jr.*, for appellant.

*Jason J. Deal, District Attorney, Gregory E. Radics, Assistant District Attorney*, for appellee.

---

[6] *Lane v. State*, 210 Ga. App. 738, 740 (3) (437 SE2d 479) (1993); see also *Beck v. State*, 216 Ga. App. 532, 536 (2) (455 SE2d 110) (1995).

[7] Id.

[8] *Harrell v. State*, 253 Ga. App. 440, 441-442 (2) (559 SE2d 155) (2002).

[9] Id. at 442.