## A90A0532. THE STATE v. ALMAND.

(395 SE2d 609)

BEASLEY, Judge.

The State appeals the grant of defendant Almand's motion to suppress drugs and paraphernalia found in her apartment after a search conducted pursuant to a search warrant.

Almand resided in an apartment complex and made a request for service due to water-soaked carpet in her hall and dining room. Riverdale police officer Canada worked as a security guard at the complex and was also assistant resident manager and maintenance assistant.

Pursuant to Almand's work order, resident manager/maintenance superintendent Sells and Canada, as part of his on-the-job training, entered the apartment with a master key in Almand's absence on February 8, 1989. They located the wet carpet outside the master bathroom and examined the plumbing to try and locate the leak.

When Canada took off his jacket and hung it on the door knob of the open bedroom door across from the bathroom, he saw on the dresser in the bedroom a bag of green leafy substance he believed to be marijuana. Canada did not touch the bag but instead continued with Sells to look for the leak. At Sells' request, Canada went into the half-bathroom in the master bedroom to examine that plumbing. He opened the vanity to inspect the pipes and saw a triple beam scale; he did not disturb it. Thereafter, he and Sells discovered the leak in an adjoining apartment.

Canada reported what he had seen to a Riverdale detective who obtained a search warrant which was executed the next day by the detective, Canada, and other officers. Although the bag was no longer present, the search uncovered, in addition to the triple beam scale, a screen strainer, razor knife, tweezers, methamphetamine, cocaine and marijuana. The drugs were in a bank bag in a concealed hole in the

wall of the master bedroom closet.

Almand moved to suppress solely on federal Fourth and Fourteenth Amendment grounds. She contended that Officer Canada exceeded the scope of his invitation to the apartment and conducted an unlawful search while looking for the leak because he had previously been advised by another officer that there were suspected illicit activities going on at the apartment.

The trial court concluded that Canada, because he had been advised to keep an eye on the apartment, entered the apartment in his profession as a law enforcement officer and not as a maintenance man.

"The federally-founded protection and that afforded by the associated exclusionary rule are against invasions of reasonable expectations of privacy by state action and, with regard to the exclusionary rule, state law enforcement action. *State v. Young,* 234 Ga. 488, 489 (1) (216 SE2d 586) (1975) cert. denied, 423 U. S. 1039." *Smith v. State,* 186 Ga. App. 303, 309 (3) (367 SE2d 573) (1988).

As conceded by Almand, Sells and Canada were invitees in her apartment. Whether Canada was subjectively on the lookout for information to buttress the earlier tip or was intent solely on finding the leak in his off-duty job as assistant maintenance supervisor, Almand had no reasonable expectation of privacy in her apartment, to the extent it was "invaded," from the personnel she had asked to be sent. They did not go beyond the scope of her request for service. They were in a place they were authorized to be, when evidence of crime was observed. See *Lang v. State,* 165 Ga. App. 576, 578 (2) (302 SE2d 683) (1983) cert. denied, 464 U. S. 937; *Brooker v. State,* 164 Ga. App. 775, 776 (1) (298 SE2d 48) (1982).

The subjective intent of an officer and the fact that actions taken may have dual motives do not preclude the conclusion that no impermissible invasion occurred because they were objectively reasonable, "valid independent of their suspicion," under the Fourth and Fourteenth Amendments. *State v. McCloud,* 187 Ga. App. 580, 583 (370 SE2d 831) (1988). An officer is not required to ignore what he observes when legitimately acting in another capacity. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California,* ___ U. S. ___, 58 USLW 4694, 4697 (June 4, 1990).

To the extent that the ruling was premised on lack of the "inadvertence" requirement of the plain view doctrine, it was erroneous.

"A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. [Cit.] The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presump-

tively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. [Cits.] A seizure of the article, however, would obviously invade the owner's possessory interest. [Cits.]" *Horton v. California*, supra at 4696. In *Horton*, the Supreme Court abolished the "inadvertence" requirement as it had developed from the plurality opinion in *Coolidge v. New Hampshire*, 403 U. S. 443 (91 SC 2022, 29 LE2d 564) (1971).

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 20, 1990.

*Robert E. Keller*, District Attorney, *Daniel J. Cahill, Jr.*, Assistant District Attorney, for appellant.
*David J. Walker*, for appellee.