## A91A2158. THE STATE v. SMALLS.
### (416 SE2d 531)

BIRDSONG, Presiding Judge.

The State of Georgia appeals the suppression of evidence in this trial of Vincent Smalls for possession of cocaine with intent to distribute. The record shows that Smalls' motion to suppress originally was dismissed for failure of counsel to appear at hearing in November 1989. New counsel was appointed in February 1990 and trial of the case was convened April 25, 1990. At the call of the case, Smalls' new counsel resurrected the motion to suppress. The trial judge heard the motion after the jury was impaneled and sworn and suppressed the evidence upon a finding that police lacked probable cause to stop or arrest Smalls because they had not received a tip from a reliable informant and did not see him engage in criminal activity with their own eyes. *Held*:

1. Smalls contends the State has no right to this appeal because the motion to suppress was heard after the jury was impanelled and sworn. OCGA § 5-7-1 (4) provides the State may make a direct appeal from an order, decision or judgment "sustaining a motion to suppress evidence illegally seized in the case of motions made and ruled upon prior to the impaneling of a jury." Ergo, Smalls contends this ruling

was not directly appealable because the motion to suppress was not heard "prior to the impaneling of a jury." Id.

The trial court in this case did not dismiss the indictment or bar further prosecution, but merely commented that its ruling suppressing the evidence would probably end the case but that the State had a right to appeal. This was not a case like *State v. Brown*, 198 Ga. App. 239, 241 (401 SE2d 295), where the trial court improperly barred futher prosecution. Other cases cited by Smalls are similarly inapt.

The provision in § 5-7-1 (4) as to direct appealability of a ruling on motion to suppress made "prior to the impaneling of the jury" was framed to allow the State to appeal such error *"before* attachment of jeopardy." *State v. Strickman*, 253 Ga. 287, 288 (319 SE2d 864). But for OCGA § 5-7-1, certain rulings would be interlocutory and not directly appealable. Double jeopardy is the point Smalls is trying to make by relying upon this statute. He in effect contends that because the ruling terminated the proceedings "after the jury was impaneled and sworn," even if this "termination" was "improper," subsequent prosecution (including this appeal) is barred. See OCGA § 16-1-8 (a) (2).

Smalls has overlooked paragraph (e) of OCGA § 16-1-8, which deals with the parallel situation of an "improper termination" of a prosecution which will bar further prosecution. OCGA § 16-1-8 (e) provides: "Termination under any of the following circumstances is not improper: (1) *The accused consents to the termination or waives by motion to dismiss or other affirmative action his right to object to the termination.*" (Emphasis supplied.) Applying that parallel principle to this case, we find the record shows clearly that Smalls' counsel, though appointed two months prior to the trial date, waited until trial to resurrect the motion to suppress which had been dismissed in November 1989. When at trial Smalls' counsel reasserted the motion to suppress on grounds that Smalls' first attorney had abandoned him, the State suggested impaneling the jury before hearing the motion; Smalls' counsel did not object but proceeded directly to argue the motion to suppress, which was granted. Smalls consented to that "termination" and by his affirmative action waived his right to object to the termination. This was his own motion to suppress which he insisted on raising at trial and failed to ask for a hearing before trial; although the State would have been wise not to suggest impaneling and swearing the jury beforehand, Smalls readily consented to this arrangement. As to a defendant's waiver by his own actions of the right to claim jeopardy, see *State v. Abdi*, 162 Ga. App. 20 (288 SE2d 772), affirmed 249 Ga. 827 (294 SE2d 506).

2. The trial court erred in suppressing the evidence for lack of probable cause. The police responded to an anonymous telephone call

from someone "inside the Frazier Homes area, around 524 Frazier Homes, to be exact, in reference to a group of black males standing between the two buildings, selling crack cocaine. They didn't specify any names or anything, just a group of black males." Plainclothes officers were dispatched directly to the location to see if they could catch the persons in the act. They entered the Frazier Homes area on foot and saw six or eight subjects "loitering around the two buildings." Several subjects ran away pursued by police; they were not caught. Two subjects, including Smalls, did not run but walked away when the plainclothes officers approached. The officers asked if they could talk to Smalls and he agreed. The officers asked him his name, what he was doing there, and where he lived. "For safety," one officer asked him to take his hands out of his pockets; when he did so the officer patted him down and felt a large sum of money in his pocket. The officer asked Smalls "if I could look at the money in his pocket, and he went into the pocket to get the money out. At that time I said, wait a minute, do you mind if I get it out, and I went in and got the money out of his pocket. . . . He did not ever say I couldn't get the money out." One dollar bill had some beige chalky substance embedded in it that "appeared to be cocaine." The officer performed a field test on the dollar bill and found it positive for cocaine. Appellee Smalls was not arrested at this time.

Another officer found a medicine bottle leaning against one of the buildings to which the officers had been called, 524 Gwinnett Street, Frazier Homes. When the police approached, Smalls and another subject were about ten feet from the bottle, walking away from it. Smalls denied knowing anything about the bottle. The bottle was seized and its contents tested positive for cocaine. Smalls was arrested four days later after fingerprints lifted from the bottle were found to match fingerprints of Smalls which were on file.

The trial court determined that the police had no probable cause in the first place to approach a group of individuals when they saw no criminal activity. Admittedly the call received by police was not from a reliable informant, but was an anonymous tip. " 'This court has always given the concerned citizen informer a preferred status insofar as testing the credibility of his information. [Cits.]' However, before an anonymous tipster can be elevated to the status of 'concerned citizen' thereby gaining entitlement to the preferred status regarding credibility concomitant with that title, there must be . . . facts from which it can be concluded that the anonymous tipster is, in fact, a 'concerned citizen.' [Cit.]" *State v. Brown*, 186 Ga. App. 155, 157 (366 SE2d 816).

The anonymous phone call did not by itself give sufficient probable cause to support the issuance of a search warrant (*State v. White*, 196 Ga. App. 685 (396 SE2d 601)), but we are not required to find

probable cause in this anonymous telephone call in this case, for no search warrant was obtained, and no search was made, merely on the basis of the anonymous phone call. That police receive information which does not amount to probable cause does not require them to shrug their shoulders and make no inquiry, but rather the circumstances may justify investigation. *Johnson v. State*, 197 Ga. App. 538, 539-540 (398 SE2d 826). This anonymous tip, while not amounting to probable cause, was sufficient to warrant a visual inspection of the public premises for investigation based on the police officers' common experiences as to drug activity in such residential areas. They found a group of persons as described in the phone call; as they approached the public area, some of the persons in the group fled running; others, including Smalls, attempted to leave the scene more slowly. This attempt to leave the scene was assessable as flight, which being evidence of consciousness of guilt (see *Carter v. State*, 180 Ga. App. 269 (349 SE2d 19)) in the circumstances gave rise to an "articulable suspicion" that Smalls was engaged in criminal activity and authorized police to stop appellee Smalls briefly for investigation. Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search (*Banks v. State*, 187 Ga. App. 280, 282 (370 SE2d 38)); certainly these circumstances gave rise to an articulable suspicion that a criminal act may have been occurring so as to authorize a brief investigatory stop. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause for arrest simply to shrug his shoulders and allow a criminal to escape. Reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop. *State v. Baker*, 197 Ga. App. 1, 2 (397 SE2d 554). The investigatory stop in this case was justified by objective manifestation that appellant was engaged in criminal activity. Id.; *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621). Compare *Johnson v. State*, supra, where the defendant was stopped solely on the basis of an anonymous phone tip even though, on investigation of the tip, no suspicious activity was observed. See also *State v. Baker*, supra; *Jones v. State*, 187 Ga. App. 421, 423 (370 SE2d 784). Appellant was not then arrested, but the brief pat-down "for safety" disclosed the bulge of money; Smalls consented to let police remove the money "and he [Smalls] went into the pocket to get the money out," but the officer preferred to get it out himself. When he pulled the money from Smalls' pocket, it was with Smalls' consent, and he found the dollar bill embedded with cocaine. There was nothing illegal about this search or seizure since it was with effective consent, and that evidence need not have been suppressed.

As for the legality of the cocaine bottle as evidence, the discovery

of this bottle leaning against the building ten feet from Smalls was not the result of the brief investigatory stop and pat-down of Smalls that night. It was observed by police in plain sight in a place where police were constitutionally authorized to be. See *May v. State*, 181 Ga. App. 228 (351 SE2d 649); *Griffin v. State*, 180 Ga. App. 189, 190 (348 SE2d 577). Indeed, Smalls disclaimed any ownership or knowledge of the bottle; evidently it had been abandoned. *Deych v. State*, 188 Ga. App. 901, 902 (374 SE2d 753); *Ramsey v. State*, 183 Ga. App. 48, 50 (357 SE2d 869). Appellant was not arrested, searched, or detained that night on the basis of discovery of this bottle. He was not arrested until four days later, after the independent discovery of fingerprints on the bottle containing cocaine which matched the fingerprints of Smalls already of file. Discovery of this bottle did not come out of a search of Smalls, illegal or otherwise (id.), even though it had his fingerprints on it, and we see no reason why it may not be used as evidence in a prosecution against him, along with the other evidence in the case, including the fact that the bottle was found near him as he was walking away from it. The trial court erred in suppressing this evidence on grounds of lack of probable cause in that police did not see Smalls sell cocaine.

*Judgment reversed. Pope and Cooper, JJ., concur.*

DECIDED FEBRUARY 24, 1992 —
RECONSIDERATION DENIED MARCH 10, 1992.

*Spencer Lawton, Jr., District Attorney, John T. Garcia, Assistant District Attorney,* for appellant.

*Wisenbaker & McCusker, Stephen M. McCusker,* for appellee.