A92A1748. THE STATE v. BALL.
(429 SE2d 258)

BEASLEY, Judge.

Appellee was indicted for possession of cocaine with intent to distribute, OCGA § 16-13-30 (b). The State brings this appeal pursuant to OCGA § 5-7-1 (4), from an order sustaining appellee's motion to suppress evidence illegally seized during the stop of his automobile. The issue before this court is the constitutionality, under the Fourth Amendment, of the investigatory stop of the vehicle following information received from an anonymous tipster. We conclude that the Fourth Amendment was not violated. Appellee raised the state constitutional provision below but did not pursue it as an independent ground, relying instead on state cases which applied the federal standard.

The facts are as follows:[1] An Albany police dispatcher received an anonymous telephone call placed to 911 at about 10:30 p.m., stating that a black male driving a 1974 Camaro automobile with a specified license tag number was selling drugs from his car at the Suwannee Swifty convenience store on North Madison Street. The dispatcher transmitted the message to Albany police Lieutenant Stalvey; he in turn relayed the information to Officer Green of the Albany-Dougherty drug unit, who was out in the field along with Officer Perkins. Green and Perkins immediately proceeded in their unmarked police car to the specified location in an effort to find the identified vehicle.

As Officers Green and Perkins were approaching the area, they saw the described Camaro turn off the 600 block of Residence Street onto North Davis Street, and followed it for about a block and a half. Approximately one block from the convenience store, Green and Perkins pulled up alongside the Camaro to observe the occupants. Officer Perkins was familiar with defendant and the vehicle. He testified that approximately one month earlier, defendant had been stopped by police in connection with a drug investigation in the 600 block of Residence Street and he (Perkins) was called to the scene to talk to him. Defendant was driving the same Camaro on that occasion. By the time Perkins arrived on the scene, defendant and the second occupant of the Camaro had exited the car and were standing outside. Defendant told Perkins that the car belonged to his sister. Although a quantity of cocaine was found on that occasion, Ball was not arrested because no contraband was found on his person. Since then, Perkins had seen him in that vehicle "probably for a month prior to [the present stop]." When he observed the car again at this time, he "recognized [it] immediately," even before he saw the driver.

Officer Green, who had no prior personal knowledge of defendant, testified: "once we pulled up on the side of the subject he looked over at us and Investigator Perkins said 'That is Kenny Ball' and Kenny pulled the car on over. . . ."

After observing the occupants of the vehicle, the officers requested that the car pull over. There were seven people in the Camaro, including defendant driver, Michael Holliday in the front pas-

---

[1] For purposes of this decision, we will consider evidence offered before a magistrate at appellee's committal hearing, and evidence presented at two evidentiary hearings on appellee's motion to suppress. The commitment hearing predated the suppression hearings by at least five months. "In considering the legality of a search, this appellate court can consider *all relevant evidence of record,* wherever located. . . ." (Emphasis in original.) *Newsome v. State,* 192 Ga. App. 846, 847 (1) (386 SE2d 887) (1989). See also *Sanders v. State,* 235 Ga. 425, 431 (219 SE2d 768) (1975) (commitment hearing testimony considered in reviewing suppression issue); *Barnett v. State,* 204 Ga. App. 491 (1) (420 SE2d 43) (1992); *Perry v. State,* 204 Ga. App. 643 (1) (419 SE2d 922) (1992). We will not consider evidence adduced at a probation revocation hearing as that involved a separate offense which was not of record in this case.

senger seat, and five female passengers. Defendant complied with the officers' request, parking his vehicle under a street light. Officer Green parked the police car in front of the Camaro.

As Officer Green was exiting the police car, he observed defendant take a white napkin out of his pants and pass it to Holliday in the front passenger seat. Holliday then attempted to throw the object out of the car window, but it bounced back off the window. The passengers were told to exit the car and Officer Green retrieved what had fallen on the floor of the vehicle. Along with the napkin he found ten pieces of what appeared to be rock cocaine. When a field test proved positive for cocaine, defendant and Holliday were arrested and taken into custody. Defendant was in possession of $474 in cash.

The issue before us is the validity of the initial stop. If a brief investigatory stop was authorized, the seizure was proper because the officers were in a place they were authorized to be when they observed evidence that a crime, possession of cocaine, was being committed in their presence. See OCGA § 17-4-20 (a); *State v. Almand*, 196 Ga. App. 40 (395 SE2d 609) (1990); *Marsh v. State*, 182 Ga. App. 892 (357 SE2d 325) (1987); *Watson v. State*, 190 Ga. App. 696 (379 SE2d 817) (1989). Holliday's thwarted attempt to abandon the evidence placed it in plain view of the officer. " 'Neither abandoned property, nor items in plain view of law enforcement officers who (as in the instant case) are where they have a right to be, can be the subject of a motion to suppress when the abandonment of the evidence and the simultaneous placing of it in plain view occurs during the course of a legal stop. (Cits.)' [Cit.]" *Wilder v. State*, 192 Ga. App. 891, 892 (386 SE2d 685) (1989).

In *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990), the Supreme Court considered whether certain information supplied by an anonymous caller, as corroborated by independent police work, exhibited sufficient indicia of reliability to justify an investigatory stop of a defendant's vehicle based on reasonable suspicion. The caller alerted police that Vanessa White would be leaving a specified apartment at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case. Law enforcement officers proceeded to the specified location where they observed defendant leave an apartment building, carrying nothing in her hands, and enter the described station wagon parked in front of the building. They followed the car as it drove the most direct route to Dobey's Motel but they stopped the vehicle just short of the motel. Defendant was told she was suspected of carrying cocaine and asked to step to the rear of her car. She then consented to the officers' request to look for cocaine and provided the combination to a locked brown attache case found

in the car. She was arrested when the officers found marijuana inside.

The Court acknowledged that, "a tip such as this one, standing alone, would not ' "warrant a man of reasonable caution in the belief" that (a stop) was appropriate.' " Id. 496 U. S. at 329, citing *Terry v. Ohio*, 392 U. S. 1, 22 (88 SC 1868, 20 LE2d 889) (1968). However, the Court found more than the tip itself. At the time of the stop, significant aspects of the caller's predictions concerning defendant's destination were verified, thus providing sufficient corroboration to furnish reasonable suspicion that defendant was engaged in criminal activity. The investigative stop therefore did not violate the Fourth Amendment. *White*, supra 496 U. S. at 331.

This court has since had occasion to apply the *White* analysis in several cases. *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826) (1990), concluded that an anonymous tip "that two black men in a black truck were selling drugs on Lewis Street," id. at 539, was too general and completely lacking in detail or reliability sufficient to authorize an investigatory stop under *White*. No suspicious activity was observed by police; the sum total of their knowledge was the contents of the tip. The court concluded that, "[a]lthough the tip certainly warranted police investigation, further observation and corroboration was required before a forcible stop was authorized." Id. at 539.

*State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314) (1991), upheld an investigatory stop where a service station attendant telephoned police complaining of an intoxicated customer and describing the person's clothing and car. Officers in the immediate vicinity observed defendant drive out of the service station and followed him. They observed no law being violated, but after following the car into and out of a deserted shopping center, they stopped defendant and requested credentials. He volunteered that he was an habitual violator without a driver's license and proceeded to fail a field sobriety test. Unlike *Johnson*, "here there was no anonymous 'tip,' but rather a complaint from an identified individual, . . . who had observed [defendant's] behavior and reported it, giving a detailed description of [defendant] and his car." *McFarland*, supra at 496. A limited but immediate inquiry was authorized by the circumstances.

A contrary result was reached in *Swanson v. State*, 201 Ga. App. 896, 897 (412 SE2d 630) (1991), where an anonymous caller reported to police that a "dark-skinned black man wearing a 'white Kangol hat,' a sweater, and jeans was selling drugs at 987 Sells Avenue." The officer arrived on the scene, known to him as a high drug trafficking area, and observed defendant standing at that address. Defendant matched the given description, including wearing a white cap with the name "Kangol" on it. There were two or three other men nearby but the officer observed no drug activity. He approached defendant to "interview" him, but first conducted a pat-down search for weapons

and found seven bags of cocaine in defendant's hat. Applying *White*, the stop was held to be invalid because it was not based on reasonable suspicion. "[T]he anonymous tip contained no detailed information demonstrating the caller's ability to predict [defendant's] future behavior, and thus contained no information from which the police could have reason to believe the tipster was not only honest but also well informed enough to justify the stop." *Swanson*, supra at 898.

Likewise, in *Moreland v. State*, 204 Ga. App. 218 (418 SE2d 788) (1992), a stop was based on an anonymous tip "that two black men in a dark red 'raggedy' Camaro were selling drugs in the Eastgate-Fairmount area of Newnan." Id. No other details were provided by the caller. Officers located a red Camaro in the area and stopped it "[b]ased solely on the anonymous tip. . . ." Id. They observed no suspicious activity by the persons in the car. One of the officers testified that as he approached the car, *after the stop had been effected*, "at that time he recognized both men and knew they had prior records for drug offenses." Id. at 219. Finding the facts indistinguishable from *Johnson*, supra, the initial stop was held to be invalid not based on reasonable suspicion.

*State v. Smalls*, 203 Ga. App. 283 (416 SE2d 531) (1992) began with an anonymous call from someone " 'inside the Frazier Homes Area, around 524 Frazier Homes, to be exact, in reference to a group of black males standing between the two buildings, selling crack cocaine.' " Id. at 285. No names were specified. Plainclothes officers entered Frazier Homes and observed six or eight subjects loitering around the two buildings. Several ran away pursued by police but were not caught. Defendant and another suspect walked away as the officers approached, but they then agreed to talk to the officers. Defendant was asked his name and to remove his hands from his pockets, whereupon a pat-down search "[f]or safety" revealed a large sum of money. The officer received defendant's permission to remove the money which contained cocaine residue. The court held that the circumstances, i.e., the anonymous tip coupled with visual inspection resulting in defendant's attempt to leave the scene, "gave rise to an 'articulable suspicion' that [he] was engaged in criminal activity and authorized police to stop [him] briefly for investigation. . . . Reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." Id. at 286.

Although the anonymous tip in the present case is closely akin to those in *Swanson* and *Moreland*, the added factor here is that Officer Perkins recognized defendant and the Camaro, *prior to making the investigatory stop*, as having been involved in an investigation where drugs were found in the immediate vicinity in the past month. "An officer is not required to ignore what he observes when legitimately acting in another capacity." *Almand*, supra at 41. Perkins' testimony

was confirmed by the second officer, who stated that he (Perkins) revealed this history while they were driving alongside defendant's car. This knowledge, along with the verified aspects of the caller's tip, i.e., the model and license plate number of defendant's car and its location one block from its predicted position, gave rise to a reasonable suspicion that defendant was in possession of drugs. "Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the 'totality of the circumstances — the whole picture,' [cit.], that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *White*, supra, 496 U. S. at 330. The totality of these circumstances provided the " 'further observation and corroboration (were) required before a forcible stop was authorized.' " *Moreland*, supra at 219.

As in *White*, supra, 496 U. S. at 331, "when the officers stopped [defendant], the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that [defendant] was engaged in criminal activity and that the investigative stop therefore did not violate the Fourth Amendment."

"This appeal does not involve a trial court's rulings on disputed facts and credibility at a suppression hearing, which must be accepted by a reviewing court unless clearly erroneous, [cit.]. . . . Rather, '(t)his court's responsibility in reviewing the trial court's decision on a motion to suppress is to ensure that there was a substantial basis for the decision. (Cit.)' " *McFarland*, supra at 495. As in *McFarland*, we find that there was not, and we reverse.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 23, 1993 —
RECONSIDERATION DENIED MARCH 11, 1993 —

*Britt R. Priddy, District Attorney, Gregory W. Edwards, Assistant District Attorney*, for appellant.
*Langley & Lee, Donald W. Lee*, for appellee.

