A94A1335. THE STATE v. SAPP.
(448 SE2d 3)

BIRDSONG, Presiding Judge.
This is an appeal by the State of the trial court's order granting appellee/defendant Lonnie L. Sapp's motion to suppress a crack pipe and urinalysis results.

The police received a report from an unknown tipster who they assumed was a concerned citizen that there were "some guys" selling drugs in the Mud Puddle, a known drug area. When the police arrived at the scene, appellee was observed acting "very suspicious." He was "standing around with a bunch of other guys talking." When the police pulled up, appellee got nervous and "acted like he started to run," but "he turned around and came back." Appellee fit the description of "some of the guys" reported by the tipster as selling drugs at that location. However, the tipster merely identified the people involved as "just young black males." No other description was given; the tipster did not identify the people either by physical char-

acteristics or by their apparel. Appellee was asked certain routine identification questions, and the officer, based on prior knowledge, recognized appellee and knew he had "a previous record." Appellee was directed to place his hands on the wall and was given a pat-down for any kind of weapons or contraband. Everyone on the corner was patted down. A crack pipe was found in appellee's back pocket. At the committal hearing, the officer testified: "At that point, I pulled the pipe out of [appellee's] pocket and just . . . asked him if he was on probation, he said yes." Appellee was asked and admitted he was on probation; appellee was then placed under arrest. "At that time, [the officer] got to talking to [appellee] and he stated [the police would not] find any drugs on him because he was a crack head . . . every time he would get crack he would smoke it before anybody could ever find it"; appellee further stated the drugs were in him. Appellee was taken to jail where a urinalysis test was performed which came back positive. A field test of the pipe showed positive for cocaine. No drugs, other than the residue in the pipe, were found on appellee's person or anywhere in the vicinity of the incident. During the committal hearing, the arresting officer conceded that other than appellee standing on the corner with a group of people and the information from the alleged, unidentified concerned citizen, the police had no reason to stop or search appellee.

The record also contains the affidavit of the assistant district attorney purporting to establish the facts determined at an unreported suppression motion hearing. The contents of this affidavit contain certain information that is contradictory to the facts testified to by the arresting officer at the committal hearing, and no reasonable explanation is offered for this contradiction in fact. For example, the affidavit asserts that the "concerned citizen gave clothing descriptions" of the persons selling drugs at the Mud Puddle location. The arresting officer testified at the committal hearing that he put appellee under arrest and "at that time" began talking to appellee who made statements regarding his drug use; however, the affidavit implies that this conversation occurred before the arrest. (Whether a *Miranda* warning and waiver also was required depends on whether appellee was interrogated after he was in police custody.) The trial court resolved some of the conflict in the evidence by finding as fact that "the anonymous tipster did not identify the [appellee] in any way nor did he . . . at any time specifically identify the [appellee] as being involved in any illegal activity." The trial court also found that, although appellee initially attempted to leave the scene on the arrival of the police, he "returned" and was asked certain questions and then patted down "for any kind of weapons and any kind of contraband."
*Held*:

1. The findings of fact of the trial court are not clearly erroneous;

accordingly, we accept those findings of fact and inherent determinations of witness credibility. See *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428). "These same principles of law apply equally to trial court rulings that are in favor of the defendant." *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646). Further, the trial court correctly concluded the caller was an anonymous tipster; the record contains no facts from which a reasonable inference could be drawn that the anonymous tipster was, in fact, a concerned citizen. See *State v. Smalls*, 203 Ga. App. 283, 285 (2) (416 SE2d 531), citing *State v. Brown*, 186 Ga. App. 155, 157 (366 SE2d 816).

2. The cases cited by the State are not controlling. In particular, we find the facts of this case substantially different from those of *In the Interest of J. L. G.*, 209 Ga. App. 565 (434 SE2d 126) (unidentified caller reported dress of one suspect and that other was on bicycle and possibly possessing small handgun; defendant broke and ran from police and was tackled); *State v. Ball*, 207 Ga. App. 729, 733 (429 SE2d 258) (after an anonymous tip and *prior* to making the investigative stop, the arresting officer recognized appellant and his car as having been involved in a recent drug investigation); *Harris v. State*, 205 Ga. App. 813 (423 SE2d 723) (defendant voluntarily consented to removal of tissue from his pocket detected during a *Terry* stop and frisk); *State v. Holton*, 205 Ga. App. 434 (422 SE2d 295) (anonymous tipster predicted defendant's future behavior in detail); *Perry v. State*, 204 Ga. App. 643 (419 SE2d 922); *State v. Smalls*, supra (some in group ran and appellant attempted to leave scene slowly but did not voluntarily return; brief pat-down for safety disclosed money which defendant then consented to let the police remove from his pocket; search and seizure not illegal since it was with effective consent).

The tipster gave only a general description of the suspected drug sellers; he identified them as young black males. The tipster gave no individual description of appellee whatever; he made no prediction about future behavior of appellee or of the group by which reliability could be tested. See generally *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301); compare *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826). Under the circumstances of this case, we find controlling *Moreland v. State*, 204 Ga. App. 218 (418 SE2d 788); *Swanson v. State*, 201 Ga. App. 896 (412 SE2d 630); and *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826). The initial stop of appellee was not valid because it was unreasonable under the circumstances; it does not qualify as a legitimate investigative stop, pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889), not being grounded on a legitimate articulable suspicion. *Moreland*, supra; see *Swanson*, supra; *Johnson*, supra.

Further, the arresting officer testified and the trial court found,

as fact, that the pat-down was conducted not only for weapons but to search for contraband of any kind. When, during the initial stages of a legitimate investigative stop nothing "serves to dispel [a police officer's] reasonable fear for his own or others' safety, [the officer] is entitled for the protection of himself and others in the area to conduct a *carefully limited search of the outer clothing* of such persons in an attempt *to discover weapons* which might be used to assault [the officer]." (Emphasis supplied.) *Terry*, supra at 30. *Terry* does not authorize a general exploratory search for contraband merely incident to an investigative stop based on an articulable suspicion. See generally *Terry* at 29-30.

3. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry*, supra at 16. As the initial stop of appellee was beyond the parameters authorized by *Terry*, supra, it constituted an illegal seizure of the person. Evidence may not be introduced if it was discovered by means of an unlawful search and seizure. See, e.g., *Terry*, supra at 29; compare *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (exclusionary rule applies where causal connection between illegal arrest and subsequent custodial statement). However, under certain circumstances, the effect of an unlawful arrest, seizure or search can be attenuated. See generally *Stringer*, supra at 607 and cases cited therein; *King v. State*, 211 Ga. App. 12, 13-14 (1) (438 SE2d 93); *Ruffin v. State*, 201 Ga. App. 792 (2) (412 SE2d 850) (police's learning of outstanding arrest warrant during illegal *Terry* stop attenuated the temporary illegal detention of defendant arising from an illegal *Terry* stop; police could make a valid arrest, based on the warrant, and search defendant at the jail incident to his lawful arrest pursuant to the warrant); see *Donner v. State*, 191 Ga. App. 58 (380 SE2d 732).

We find that no attenuating circumstances exist as to the pat-down and seizure of the crack pipe; its seizure clearly was causally connected to the illegal investigative stop. The trial court did not err in suppressing this evidence. However, attenuating factors may exist as to the subsequent search of appellee by means of urinalysis testing. Whether such attenuating circumstances exist depends upon certain facts which have not, as yet, been addressed by the trial court. Appellee was in a probation status; one of the special conditions of that probation was, inter alia: "Probationer shall submit to a search of his person . . . and/or effects, as these terms of the Fourth Amendment to the United States Constitution are defined by the Courts, any time of the day or night with or without a search warrant, whenever requested to do so by . . . any city, county or state law enforcement officer."

By accepting this special condition of probation, and to the extent a search and seizure was not otherwise tainted without subse-

quent attenuation so as to compel invocation of the exclusionary rule, appellee waived his Fourth Amendment right. See *Allen v. State,* 258 Ga. 424 (369 SE2d 909); *Nelson v. State,* 199 Ga. App. 487, 488 (3) (405 SE2d 310). A search conducted pursuant to a special condition of probation need not be made as a routine incident of the probation supervision process. *Hancock v. State,* 205 Ga. App. 890, 891 (424 SE2d 77); *State v. Bethune,* 207 Ga. App. 340 (427 SE2d 795); but cf. *Luke v. State,* 178 Ga. App. 614, 616 (2) (344 SE2d 452). " ' "The rule is that there must be some conduct reasonably suggestive of criminal activity to 'trigger' the search." ' " *Anderson v. State,* 209 Ga. App. 676, 677 (434 SE2d 122). It can be " 'prompted by a good-faith suspicion, arising from routine police investigative work.' " *Hancock,* supra; accord *Bethune,* supra. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer). *Anderson,* supra; *Hancock,* supra.

In this instance, it appears that the police did not become aware that appellee was on probation until *after* they had initiated the unauthorized *Terry* stop. Moreover, the evidence is conflicting and has not been resolved whether appellee stated he was on probation before or after he was placed under arrest. If the police learned of appellee's probation status and subjected him to urinalysis because of a causal connection between the unauthorized *Terry* stop and his subsequent statement admitting his probation status, and no attenuating circumstances existed, the resulting search by means of urinalysis testing would be rendered inadmissible. See *Stringer,* supra.

Based on the state of the record, we cannot determine whether facts exist which would attenuate the effect of the unauthorized *Terry* stop. Accordingly, we remand this case to the trial court with direction to ascertain whether the causal connection above-addressed exists, and, if so, whether any attenuating circumstances exist, which would negate the effect of the unauthorized *Terry* stop as to the subsequent urinalysis test of appellee. Among those matters to be considered are: Was appellee's statement regarding admitting his probation status made before or after his arrest? Was the statement spontaneous or was it obtained during the police's questioning of appellee? If the statement was made after arrest and not spontaneously, was appellee given a *Miranda* warning and did he waive his *Miranda* rights before the statement was obtained? Did the police learn by means independent of the *Terry* stop the existence of appellee's probation status? If so, did they compel him to undergo urinalysis testing for legitimate reasons not causally related to his unauthorized *Terry*

stop? Would the information regarding appellee's status have been subject to inevitable discovery notwithstanding the unauthorized *Terry* stop?

*Judgment affirmed in part and remanded with direction. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

ON MOTION FOR RECONSIDERATION.

Appellee Lonnie L. Sapp's motion for reconsideration is denied. Appellee may assert the contentions made in his motion before the trial court, including his argument that the record contains no evidence of the special terms of his probation. The record contains as an exhibit the first page of final disposition, signed by the superior court judge on June 9, 1992; this document expressly refers to additional and special conditions of probation contained on page two thereof. The trial court should determine, inter alia, during the course of the hearing on remand whether the absence of page two of the final disposition from the record is due merely to clerical error or whether such evidence was never introduced. The trial court may correct any clerical or other administrative errors or omissions in the record. OCGA § 5-6-41; see also OCGA § 5-6-48 (d).

*Motion for reconsideration denied.*

DECIDED JULY 26, 1994 —
RECONSIDERATION DENIED AUGUST 16, 1994.

*Britt R. Priddy, District Attorney, Kenneth B. Hodges III, Assistant District Attorney*, for appellant.

*Farkas & Ledford, Thomas G. Ledford*, for appellee.