A05A1379. SMITHSON v. THE STATE.
(621 SE2d 783)

MIKELL, Judge.

After a bench trial, Glenn Corbett Smithson was convicted of three counts of theft by receiving stolen property (Counts 1-3), trafficking in cocaine (Count 7), and possession of less than one ounce of marijuana (Count 8). Smithson was sentenced to fifteen years to

---

serve ten in confinement on the trafficking offense, ten years on the theft by receiving offenses to run concurrently with the sentence on Count 7, and twelve months to serve on the possession charge, to run concurrently with the sentences imposed on Counts 1, 2, 3, and 7. Smithson appeals from the denial of his motion to suppress raising three errors. Smithson asserts that the police conducted an illegal, warrantless search of his home, that the "no knock" provision of the search warrant was improvidently granted, and that the officers executing the warrant exceeded its scope. For the reasons stated below, we affirm.

"On appeal from a denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling, and the trial court's application of law to undisputed facts is subject to de novo review."[1] So construed, the evidence adduced at the suppression hearing established that on April 4, 2003, Detective C. P. Faulkner of the Gwinnett County Police Department was called to a cell phone store where two men were attempting to activate phones that had been stolen from another store. The men were taken to the police station, and Faulkner interviewed one of them, Nabil Bouzeidan. Bouzeidan told Faulkner that he received the phones and $2,000 in lieu of full payment for repairs that he made on the home of a man he identified as "Glenn" and his girlfriend Xenia; that several of the same phones were at their house; and that Glenn kept a large amount of marijuana in the back of his truck and offered to sell some to one of Bouzeidan's employees.

Bouzeidan showed Faulkner the home where he was making repairs. Faulkner confirmed through his investigation that the defendant and his girlfriend, Danielle Xenia Alexander, lived at the home.[2] Based on the information obtained from Bouzeidan, Faulkner initiated an undercover operation in which Corporal Kevin Isenhour would pose as a contractor and enter Smithson's home with Bouzeidan to determine if there were stolen cell phones in the house. Faulkner showed Isenhour the cell phone and the box in which it came before Isenhour entered Smithson's home.

Isenhour testified that he accompanied Bouzeidan to Smithson's home on April 15, 2003; that he wore an audio "bug" and that a technical surveillance unit videotaped the visit; that Bouzeidan knocked on the door and told the man who answered, who was later identified as Alexander's father, that they were there to evaluate

---

[1] (Punctuation and footnote omitted.) *Salmeron v. State*, 273 Ga. App. 55 (614 SE2d 177) (2005). See also *Smith v. State*, 262 Ga. App. 614, 615 (585 SE2d 888) (2003).

[2] At the time of the hearing on the motion to suppress, Alexander was a co-defendant in the case.

additional work that needed to be completed on the house and the garage; that the man escorted them to the garage then invited them into the house; and that Isenhour observed cell phones of the type that he had been shown in the bathroom and the master bedroom.

Faulkner prepared a written affidavit containing the information he had learned thus far and presented it, along with an "Affidavit and Application for a Search Warrant" ("Application") to a magistrate judge to obtain a search warrant. The affidavit did not mention Faulkner's suspicion that Smithson was in possession of drugs. However, the Application sought a "no knock" provision on the grounds that giving verbal notice would greatly increase the peril to the officers executing the warrant because there might be narcotics on the premises. The judge issued the search warrant and authorized the "no knock" entry.

Seven detectives, including Faulkner, a uniformed officer, and two K-9 officers executed the warrant on April 16, 2003, at approximately 8:00 p.m. Faulkner testified that the dog handlers were stationed at the back of the house in the event someone tried to flee; that the remaining officers entered the home through the front door after two of them used a battering ram to open the door; that the officers announced that they were executing a search warrant; that Alexander, her father, and his fourteen-year-old niece were the only persons present; and that they recovered five cell phones.

Faulkner further testified that while he was inside the house, he saw a gas mask attached to a "bong," which he knew was used to smoke marijuana or cocaine, in plain view in the kitchen and that he learned subsequently that one of the K-9 dogs had alerted when it did a "free air" search around Smithson's truck. Shortly thereafter, the dog was brought inside the house to do a free air search. With the help of the dog, the officers located cocaine in various places in the master bedroom and bathroom and digital scales in a suitcase in the master closet. The officers also found marijuana in plain view on the mantel in the living room and in a spare bedroom. Faulkner testified that the drugs were found in locations where cell phones could have been hidden.

1. In his first error, Smithson argues that Isenhour engaged in an illegal warrantless search when he posed as a contractor to enter Smithson's house even though his sole purpose for the entry was to search for evidence of a crime. We agree that Isenhour's search was illegal but because the subsequently executed search warrant was otherwise valid, we find no reversible error.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures."[3]
The United States Supreme Court has held that

> [i]t is axiomatic that the physical entry of the home is the
> chief evil against which the wording of the Fourth Amend-
> ment is directed. And a principal protection against unnec-
> essary intrusions into private dwellings is the warrant
> requirement imposed by the Fourth Amendment on agents
> of the government who seek to enter the home for purposes
> of search or arrest.[4]

Consequently, it is the general rule that "a law enforcement officer's
entry into a home without a search warrant and without consent or
exigent circumstances constitutes an unjustified, forcible intrusion
that violates the Fourth Amendment."[5] Here, the state argues that
the search was valid because the consent to enter the home was
voluntary. In order to justify a warrantless search based upon con-
sent, "the State must prove the consent was voluntary under the
totality of the circumstances."[6] It did not.

The state cites *Hall v. State*[7] for the proposition that "[t]here is
nothing illegal in the use of deception by police officers in the
obtaining of evidence for the purpose of criminal prosecutions."[8] In
that case, however, the officer posed as an insurance agent to gain
entry to a home but revealed shortly thereafter that he was in
possession of a valid search warrant. Here, at the time of Isenhour's
search, no warrant had been obtained. Isenhour entered Smithson's
home with Bouzeidan, who represented that the officer was a con-
tractor with whom he was working. Isenhour testified that the sole
reason for his entry into the home was to search for evidence of a
crime. "Without more, even probable cause to believe that a crime has
been committed or is being committed does not authorize a warrant-
less search of one's dwelling."[9] Furthermore, we have held that
"[c]onsent which is the product of coercion or deceit on the part of the

---

[3] See also Ga. Const. of 1983, Art. I, Sec. I, Par. XIII.

[4] (Citation and punctuation omitted.) *Welsh v. Wisconsin*, 466 U. S. 740, 748 (II) (104 SC
2091, 80 LE2d 732) (1984).

[5] (Footnote omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400)
(2004).

[6] (Citations omitted.) *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002).

[7] 113 Ga. App. 587 (149 SE2d 175) (1966).

[8] Id. at 589 (3).

[9] (Punctuation and footnote omitted.) *Leon-Velazquez*, supra at 762 (1). See also *Kirsche v.
State*, 271 Ga. App. 729, 731 (611 SE2d 64) (2005).

police is invalid."[10] Accordingly, we find that Isenhour's search was illegal, but as discussed in Division 2, it did not invalidate the search warrant.

2. Though Smithson did not challenge the search warrant as a whole, in light of our holding in Division 1, we must determine whether the affidavit provided probable cause to issue the warrant in the absence of the averments related to Isenhour's search.[11] In order to do so, we look to Faulkner's affidavit.

> In determining whether an affidavit provided sufficient probable cause, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.[12]

An affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause.[13] As Smithson has not produced any such evidence, he has not rebutted the presumption in favor of the affidavit's validity.

The affidavit supporting the warrant identified Bouzeidan as the informant and explained specifically how he obtained his knowledge. The fact that the phones were stolen was verified by a source other than the informant. The relevant time period was set forth in the affidavit, which showed that the information was not stale. Moreover, the affidavit established that Faulkner had taken steps to verify the data provided by Bouzeidan. Therefore, even in the absence of the averments related to Isenhour's search, the magistrate had a substantial basis for concluding that probable cause to issue the search

---

[10] (Citation, punctuation and footnote omitted.) *State v. Jourdan*, 264 Ga. App. 118, 121 (1) (589 SE2d 682) (2003). See generally *Code v. State*, 234 Ga. 90, 95 (III) (214 SE2d 873) (1975) (where a police officer represents that he has authority to search when he does not, the consent to search is rendered invalid); *Palmer v. State*, 257 Ga. App. 650, 653 (2) (572 SE2d 27) (2002) (same).

[11] See generally *Ivory v. State*, 199 Ga. App. 283, 284 (3) (405 SE2d 90) (1991) (where some information in affidavit was discredited, remaining information still sufficient to support magistrate's finding of probable cause).

[12] (Citation omitted.) *Porter v. State*, 264 Ga. App. 526, 529 (2) (591 SE2d 436) (2003).

[13] *Davis v. State*, 273 Ga. App. 397, 403 (5) (d) (615 SE2d 203) (2005).

warrant existed based on Faulkner's recount of Bouzeidan's information and his independent investigation.[14]

3. In his second enumerated error, Smithson argues that the trial court should not have approved the "no knock" provision in the search warrant and that its inclusion voided the warrant. We disagree.

Pursuant to OCGA § 17-5-27, when executing a search warrant, officers are generally required to make a good faith attempt to give verbal notice of their authority and purpose prior to gaining entry by the use of force. However, when the officers reasonably believe that announcing themselves would either greatly increase their peril or lead to the immediate destruction of evidence, this requirement may be excused.[15]

> The reasonableness standard for a no-knock entry, as opposed to a probable cause requirement, is not high. To establish reasonable grounds, the officer does not have to show specific information that would lead officers to conclude that they *would* be harmed if they announced their authority and purpose; it is sufficient if the information supplied by affidavit and sworn testimony would lead to the reasonable conclusion that the officers *could* be harmed if they announced their authority and purpose.[16]

The Application indicated that Faulkner sought a no knock provision because he had reason to believe that the giving of verbal notice would greatly increase the peril to the officers. In support of his request, he provided the following facts on the Application:

> Based on information received from [Bouzeidan] as well as the criminal history of Glenn C. Smithson, we have reason to believe there may be narcotics on the premises, with Smithson or other residence [sic] of 1980 Hollywood Drive engaging in the sale of narcotics. It is a well established fact that when narcotic sales are present the presence of firearms is to be expected. The potential presence of firearms would justify the no knock provision we seek.

---

[14] See *Mize v. State*, 173 Ga. App. 327, 328-329 (1) (326 SE2d 782) (1985), citing *Choice v. State*, 168 Ga. App. 28, 29 (2) (308 SE2d 1) (1983); *Johnson v. State*, 164 Ga. App. 501, 503 (3) (297 SE2d 38) (1982); *Shaner v. State*, 153 Ga. App. 694, 699-700 (266 SE2d 338) (1980).

[15] *Adams v. State*, 201 Ga. App. 12, 14 (3) (410 SE2d 139) (1991).

[16] (Footnote omitted; emphasis in original.) *Cook v. State*, 255 Ga. App. 578, 579 (565 SE2d 896) (2002), citing *Richards v. Wisconsin*, 520 U. S. 385, 394-395 (117 SC 1416, 137 LE2d 615) (1997).

Faulkner testified that Smithson's criminal history included a prior arrest for the sale of narcotics in New York, and that in Faulkner's experience, the sale of narcotics was associated with the presence of firearms. "[I]t is judicially recognized that firearms are tools of the drug trade."[17] Therefore, we conclude that a substantial basis existed for the trial court's determination that the inclusion of the no knock provision in the warrant was reasonable.

4. In his last error, Smithson contends that the trial court should have granted his motion to suppress because the officers exceeded the scope of the search warrant by utilizing drug dogs to conduct an exploratory search for contraband. We disagree.

Smithson maintains that the plain view exception, which provides that "[a] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be,"[18] did not authorize the admission of the seized contraband because it was not located inadvertently. Rather, it was seized solely because of the assistance of the drug dogs. In support of his contention, Smithson relies on *Lockhart v. State*.[19] In that case, we reversed a conviction for possession of marijuana where the police used a drug dog for the sole purpose of locating contraband while executing a search warrant that only authorized a search for untaxed whiskey. Following the dictates of the United States Supreme Court in *Coolidge v. New Hampshire*,[20] we held that the contraband was not admissible under the "plain view" doctrine because it was not located inadvertently.[21] The inadvertence requirement was relaxed, however, in *Horton v. California*,[22] when the Supreme Court concluded that "even though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition."[23] There, the police officer obtained a search warrant to seize the proceeds of an armed robbery only, even though the affidavit in support thereof also described the weapons used in the armed robbery.[24] The officer did not locate the robbery proceeds but seized the weapons which he observed in plain

---

[17] *Felix v. State*, 241 Ga. App. 323, 326 (4) (526 SE2d 637) (1999), citing *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991) (whole court).

[18] (Citation omitted.) *State v. McTaggart*, 241 Ga. App. 852, 855 (528 SE2d 309) (2000). Accord *Phillips v. State*, 269 Ga. App. 619, 623 (2) (604 SE2d 520) (2004) (officer may seize contraband, which he has probable cause to consider tangible evidence of the commission of a crime even though the contraband is not listed in the warrant).

[19] 166 Ga. App. 555 (305 SE2d 22) (1983).

[20] 403 U. S. 443, 469 (91 SC 2022, 29 LE2d 564) (1971).

[21] *Lockhart*, supra at 557.

[22] 496 U. S. 128 (110 SC 2301, 110 LE2d 112) (1990).

[23] Id. at 130. See *State v. Almand*, 196 Ga. App. 40, 42 (395 SE2d 609) (1990) (inadvertence requirement abolished).

[24] *Horton*, supra at 131 (I).

view. The Court held that their seizure was authorized by the "plain view" doctrine even though the weapons were not discovered inadvertently.[25] It reasoned that

> [t]he fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. If the officer has knowledge approaching certainty that the item will be found, we see no reason why he or she would deliberately omit a particular description of the item to be seized from the application for a search warrant. Specification of the additional item could only permit the officer to expand the scope of the search. On the other hand, if he or she has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.[26]

Therefore, the fact that Faulkner expected to find contraband during the search did not invalidate its seizure as long as the search warrant was valid and the search was confined in area and duration.

As discussed in Division 2, the search warrant was valid. Thus, the officers were entitled to be at Smithson's residence. The trial court found that the police successfully located cell phones during the search, that Faulkner observed the bong, which could be used in connection with marijuana or cocaine, then learned that the dog had alerted on the truck, which the officers had a right to search,[27] that the bong triggered the officers' suspicion that drugs were present, that other officers observed marijuana in plain view, and that the "plain view" exception applied because the officers were on the premises legally. The court also concluded that the dogs were not brought to the scene solely for the purpose of searching for drugs in the house.

"In reviewing the denial of a motion to suppress, . . . [t]he trial court's findings on issues of credibility . . . are to be upheld unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be

---

[25] Id. at 142 (III).

[26] (Footnote omitted.) Id. at 138-139 (III).

[27] *Solis v. State*, 268 Ga. App. 493, 498-499 (1) (c) (602 SE2d 166) (2004) (a warrant authorizing the search of a particular dwelling extends by implication to areas within the curtilage of the dwelling, including vehicles parked within the curtilage of that dwelling).

disturbed if any evidence supports them."[28] The evidence supports the trial court's finding that the officers did not exceed the scope of the warrant.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 23, 2005 —

*King & King, David H. Jones, Joseph C. Larkin,* for appellant.
*Daniel J. Porter, District Attorney, Karen M. Harris, Assistant District Attorney,* for appellee.

---

[28] (Citations omitted.) *Dole v. State,* 256 Ga. App. 146-147 (1) (567 SE2d 756) (2002).