## A07A2508. THE STATE v. GOODMAN.

(660 SE2d 21)

ANDREWS, Presiding Judge.

The State appeals the trial court's grant of Hugh Sidney Goodman's motion to suppress in this narcotics case.[1]

> An appellate court reviewing a trial court's order on a motion to suppress evidence must accept the trial court's decisions with regard to questions of fact and credibility unless they are clearly erroneous. The reviewing court must also construe the evidence most favorable to the upholding of the trial court's findings and judgment and must not disturb the findings of the trial judge unless no evidence exists to support them.

(Citation omitted.) *Parker v. State*, 233 Ga. App. 616, 617 (504 SE2d 774) (1998).

So viewed, the evidence here was that, a week or ten days before the search and seizure at issue, Atlanta Police Detective Schiffbauer had spoken to an individual at the jail who had told him that Goodman, using the alias "Portia," was selling drugs from his home on Carlisle Way in Atlanta. Other investigation approximately a year earlier by the detective indicated that Goodman also sold drugs from various hotels in the metropolitan area. Schiffbauer ran Goodman's name and verified that he lived at the Carlisle Way address. Sometime prior to February 19, 2007, Schiffbauer, dressed in civilian clothing and in an undercover capacity, went to that address and saw Goodman get out of his car in his driveway. Schiffbauer approached Goodman and inquired about drugs and asked if Goodman knew where he could purchase any. Goodman was not receptive and Schiffbauer left.

On February 19, 2007, Investigator P. J. Roberson was asked by Schiffbauer to go to Carlisle Way, knock on the door, gain entry, and attempt to make a drug buy. Around 4:00 p.m., Roberson, accompanied by Schiffbauer and Investigator Smart, all dressed in civilian clothing, went to Carlisle Way. While the other two officers remained out of sight, Roberson went to the door of the condominium and knocked. The door was answered by John Delgado, a house guest of

---

[1] We first consider the motion to dismiss the appeal filed by Goodman on the ground that the State's brief did not contain an enumeration of errors as required by OCGA § 5-6-40 and Court of Appeals Rule 23 (a) and the motion of the State to file an amended brief. We note the failure on behalf of the District Attorney of the Atlanta Judicial Circuit and, although it was unprofessional, we exercise our discretion to deny the motion to dismiss, grant the motion to file an amended brief, and consider the merits of the appeal.

Goodman, and Roberson identified himself as "Otto" and asked if "Portia" was available. Delgado allowed him into the condominium. Delgado and Roberson proceeded down a hallway and turned a corner into the main living area, where Goodman and another man later identified as Michael Bland, were seated on a sofa watching pornography on the television. Roberson could see suspected narcotics on the table in front of the couch. Goodman did not respond to Roberson when he introduced himself as "Otto," a clockmaker. Goodman continued to stare at Roberson without speaking and Roberson sat in a chair and began watching the television. After a couple of minutes of silence, Roberson asked Goodman to sell him drugs, but Goodman did not respond. Goodman then asked "[y]ou're not the police?" After Roberson said "no," he was asked to stand up, drop his pants, and turn around, which he did. Roberson then told Goodman they had partied with mutual friends and asked Goodman to sell him $100 of "girl," powder cocaine. Just prior to dropping his pants, Roberson had been called on his cell phone by Schiffbauer. Because Goodman kept trying to figure out where he and Roberson had met and was unsuccessful, Roberson became convinced no sale would be forthcoming and gave Schiffbauer the agreed-upon signal to enter in order to "freeze" the scene and seize the occupants. When Bland responded to another knock on the door, he quickly shut it and announced that police were present. As Bland walked back into the den after shutting the door, Roberson said the two men were his ride, went to the door, unlocked it, and let them in. All three occupants were then arrested and the scene secured. Approximately an hour and a half after Roberson first entered the condo, Schiffbauer obtained a search warrant based on the above information.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[2] The United States Supreme Court has held that

> [i]t is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest.

---

[2] See also Ga. Const. of 1983, Art. I, Sec. I, Par. XIII.

(Citation and punctuation omitted.) *Welsh v. Wisconsin*, 466 U. S. 740, 748 (II) (104 SC 2091, 80 LE2d 732) (1984).

Consequently, it is the general rule that "a law enforcement officer's entry into a home without a search warrant and without consent or exigent circumstances constitutes an unjustified, forcible intrusion that violates the Fourth Amendment." (Footnote omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400) (2004).

The State relies on *Lewis v. United States*, 385 U. S. 206 (87 SC 424, 17 LE2d 312) (1966), for its argument that the trial court erred in granting the motion to suppress. There, however, the undercover agent misrepresented himself to the defendant, not a third party, as a civilian interested in purchasing drugs. Lewis then personally "invited the undercover agent [in]to his home for the specific purpose of executing a felonious sale of narcotics." Id. at 210. The Supreme Court found that Lewis had converted his home into a commercial center to which he invited outsiders for the purpose of transacting unlawful business. Id. at 211.

Here, as noted by the trial court in its order, Roberson appeared on the doorstep of Goodman's home unannounced and uninvited; the door was closed and locked; another officer had earlier been rebuffed when he attempted to buy drugs from Goodman at the home; a third party allowed Roberson into the home; and Goodman appeared cautious and unwilling to sell drugs to Roberson after he entered the home.

There was nothing in the record to indicate that Goodman ever consented to Roberson's entry into his home or that Delgado was in any way authorized by him to allow such entry. See *Georgia v. Randolph*, 547 U. S. 103, 114 (II) (D) (126 SC 1515, 164 LE2d 208) (2006) (consent of co-habiting spouse unavailing in face of objection by defendant); *Smithson v. State*, 275 Ga. App. 591, 594 (1) (621 SE2d 783) (2005). Therefore, the trial court correctly found that Roberson's entry into Goodman's home was in violation of the Fourth Amendment. See *State v. Kuhnhausen*, 289 Ga. App. 489 (657 SE2d 592) (2008).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 7, 2008.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellant.
*Rand J. Csehy*, for appellee.